## ESTATE OF EASTMAN.

*Construction of a will.*

1. The *intention* of a testator, as collected from the will, must prevail, whenever effect can be given to it.

2. A testator devised to his wife in fee one-third of all the real estate of which he should die seized, and bequeathed her one-half of his personal property. After certain other bequests, he bequeathed to his father and mother, and the survivor of them, the use and profits of the residue of his property, devising such residue of the real estate to the executor in trust for that purpose, and added: "If, at the decease of my father and mother, the value of the real estate devised to my wife, added to the amount of personal property, * * shall not be in the aggregate $25,000, then * * I devise and bequeath unto her such sum as will make the aggregate sum derived from my estate $25,000." The executor was empowered to sell the real estate when he might deem best, and invest the proceeds, etc.; and residuary legatees were named. After probate of the will, the whole estate was inventoried and appraised, according to the statute. Certain portions of the real property were partitioned between the wife and the executor shortly after, and other portions were sold, and one-third of the purchase-money paid to her. Upon a settlement of the estate after the death of testator's parents, — *Held*, that, in ascertaining whether the wife had received the full amount of $25,000, the value of the lands assigned to her must be determined as follows:

(1) As to such lands as she then retained, she must be charged with their value *at the time of the death of the testator's parents*, and not at the death of testator or probate of the will.

(2) As to lands sold before the death of testator's parents, she must be charged with the price obtained for them.

APPEAL from the Circuit Court for *Grant* County.

Upon a final settlement of the estate of Ben. C. Eastman, the county court of said county, among other things, ordered and adjudged that the widow of the deceased had received from his real and personal estate a sum amounting, in the aggregate, to $25,000, and that, therefore, under the terms of the will of said deceased (which are recited in the opinion, *infra*), no further allowance should be made her out of said estate. *Mrs.*

*Eastman* appealed from this decision to the circuit court. That court, after certain proceedings, not necessary to be here stated, directed its clerk to ascertain and report the value of certain lands set apart to *Mrs. Eastman*, under the will, by virtue of a partition of the lands of the estate between her and the executor; such value to be determined as of the day when the will was admitted to probate. Afterward, the court found that *Mrs. Eastman*, "on the day of the death of the survivor of the father and mother of said Ben. C. Eastman," had not received the full sum of $25,000 to which she was entitled, but was still entitled to receive $148 from said estate. Judgment was rendered accordingly. The residuary legatees and *Mrs. Eastman*, respectively, excepted to this finding, and appealed from the judgment.

*Charles Dunn* (with *J. H. Knowlton* and *S. U. Pinney*, of counsel), for *Mrs. Eastman*.

*Paine & Carter*, for the residuary legatees.

COLE, J. It appears to us that the only question properly before us upon these cross-appeals is, whether the widow, *Mrs. Eastman*, has received from the real and personal estate of her deceased husband, exclusive of the specified articles mentioned in the third clause of the will, a sum which, in the aggregate, amounts to twenty-five thousand dollars. It is claimed, by the residuary legatees, that the proof in the case clearly shows that, at the time of the settlement of the executor's account, on the 19th of March, 1866, she had received considerably more than that amount, and that she ought to be required to refund the excess. The probate court, on that settlement, adjudged that *Mrs. Eastman* had already received her full equitable portion of the estate, as legatee under the will. The circuit court held, on her appeal, that she was entitled to receive, from the executor of the estate, the further

sum of $148. There was a general exception by the residuary legatees to the finding of facts by the court, and to the conclusions of law thereon. Now, upon this general exception, it is insisted that we should go through the various charges, or debits and credits, in the account of the executor, and correct certain items therein, although no specific exceptions were taken to such items before the circuit court. This, it appears to us, we cannot do. We cannot undertake to go through the various items in the account, and determine whether, by error or otherwise, money or property has been paid or delivered to *Mrs. Eastman* to which she is not entitled, and, if so, how much; but only look into the evidence far enough to ascertain whether she has received from the real and personal estate of the testator a sum amounting to twenty-five thousand dollars, and that no further payments can be allowed her. As the case now stands, we think that this general question is the only one properly raised by the exception, and to that we will confine our attention. Does the case, then, show that *Mrs. Eastman* has received the full amount to which she was entitled, according to the terms of the will? To determine this question, it will be necessary to look into the provisions of the will.

By the first clause of the will, Mr. Eastman devised to his wife one third of all the real estate of which he might die seized, to be held by her in fee simple; and also bequeathed her one half of his personal estate; certain specified articles of personal property; also such allowance, not exceeding five hundred dollars per year, for her maintenance, as his executors should think proper, until the estate should be sufficiently settled to allow the payment to her of her half of the personal property; and also the money to be paid on his life insurance policy. By the second clause of the will, he made a bequest of five thousand dollars for a purpose therein named. In the third clause, he bequeathed to

his father and mother, and the survivor, the use and profits of all the residue of his property, real and personal, not thereinafter devised and bequeathed, provided the same should not exceed in the clear five hundred dollars per annum, to be paid them as therein specified, until the decease of his father and mother, devising such residue to the executors in trust for that purpose ; and then comes the language upon which the whole controversy in this case turns, and which is as follows : "And if at the decease of my father and mother, the value of the real estate devised to my wife, added to the amount of personal property, exclusive of apparel, household furniture, horses, carriage and books, and the amount received from my life insurance, shall not be in the aggregate twenty-five thousand dollars — then, if my wife shall be alive and not married, I give, devise and bequeath unto her such sum as will make the aggregate sum devised from my estate twenty-five thousand dollars ;" and then power was conferred upon the executors to make sale of the real estate when they might think the interest of the estate would be promoted thereby, and to invest the proceeds in such securities as would afford a safe and steady income. By the fourth clause of the will, the testator, after the death of his father and mother, devised and bequeathed the residue and remainder of his estate, except such as was thereafter specially named, to his brothers and sisters. The other clauses of the will have no bearing whatever upon the question we are considering.

The testator died in February, 1856, and his will was admitted to probate March 18, 1856. The survivor of the parents of the testator died July 10, 1865, and *Mrs. Eastman* has not married since the death of her husband. The estate, both real and personal, was inventoried and appraised according to the statute, immediately after the probate of the will. Some of the lands were partitioned between the executor and *Mrs. Eastman*, November 12, 1857, quantity and value considered,

in the proportion of one third to her and two thirds to the executor. The tracts set apart to *Mrs. Eastman* were, for the purpose of the accounting, charged to her at the value fixed by the appraisers. Previous to November, 1857, other portions of the real estate had been sold, and one third of the purchase-money had been paid over to *Mrs. Eastman*, and she has been charged therewith by the executor in his final account. And now, for the purpose of determining whether *Mrs. Eastman* has received property which, in the aggregate, amounts to the sum of twenty-five thousand dollars, exclusive of the specified articles, this question arises: At what time is the value of the real and personal property taken by her to be estimated? Is it at the date of the death of Mr. Eastman, or the time his will was admitted to probate; or is it at the date of the death of the surviving parent? It seems to us that the language used in the third clause, which has been cited, settles this point beyond all doubt or controversy. At the death of the surviving parents, the residue of the estate was to be divided among the residuary legatees. When this event happened, then was to be ascertained and determined whether the value of the real estate devised to *Mrs. Eastman*, added to the amount of personal property which she took by the will, exclusive, etc., should amount in the aggregate to the sum of twenty-five thousand dollars. If so, she was to receive nothing further; but if not, and she should then be alive and unmarried, she was to have such further sum as would make the aggregate amount of twenty-five thousand dollars. Such is the plain import of the language used, and no sufficient reason occurs to our minds why effect should not be given to it. It is a cardinal rule in cases of this nature, that the intention of the testator, as gathered from the whole instrument, is to control, even if some embarrassment should attend the carrying the same into effect. But here there need be

no embarrassment in effectuating the intention of the testator. It is very true, that at the death of the testator the devise to *Mrs. Eastman* of one third of the real estate, and of one half of the personal property, became vested in her. She could doubtless sell and dispose of that interest. And when the event occurred contemplated by the will, that a valuation of the property received by her should be made, then whatever she had sold any portion of the estate for would properly be assumed as the true value of that portion, while it would not be difficult to ascertain the value of that portion she then retained. Obviously, it would be no more difficult or uncertain to get at the valuation of her property upon this basis, than it would be to take the date of the death of the testator, or of the probate of the will, as the time for estimating it. Assume either date, and it is possible to determine that value, at least by approximation. And it is quite as difficult to get at the true value of her interest when the will took effect and the property became vested in her, as at the decease of the surviving parent. At all events, the testator has adopted the latter period or event as the one for estimating the value, and it is certainly quite as readily ascertained then as at any previous time. Of course, where *Mrs. Eastman* has sold property, she ought not to be charged with any more than she obtained for it. But there would not seem to be any injustice in charging her with that amount for the purpose of ascertaining the aggregate value of her interest.

But it is objected, that upon this construction of the will, *Mrs. Eastman* would not have the benefit of any natural increase in the value of the real estate devised her, which might occur intermediate the time when the title became vested in her and that at which the valuation was made. That is true. But neither would she sustain the loss of any depreciation therein during the same time. And if we were at liberty to indulge in speculation as to

what was really in the mind of the testator when he inserted this provision in his will, we might say that doubtless he thought it quite as probable that the property would depreciate as that it would rise in value. This might have been the reason why he adopted the decease of his surviving parent as the time when the valuation of her interest was to be made. However that may be, he has fixed upon that event as the date when the value is to be ascertained ; and the valuation must be made accordingly. And, stating the final account upon that basis, charging *Mrs. Eastman* with the amount she realized for the lands sold, and with the value of those retained by her on the 10th of July, 1865, and also with the value of the personal property which she took under the will, exclusive of the specified articles, it appears that she has received a sum amounting in the aggregate to twenty-five thousand dollars, and that no further payments can be made to her.

Having reached this result, it is unnecessary to notice the other points discussed by counsel on the argument.

It follows from these views, that the judgment of the circuit court on the settlement of the final account of the executor must be reversed, and that of the probate court affirmed.

*By the Court.* — Ordered accordingly.