LARDNER, Respondent, vs. WILLIAMS and others, Appellants.

*February 9 — March 1, 1898.*

*Wills: Construction: Power to mortgage: Conveyance by person having both an interest and a power: Reformation: Judgment.*

1. By his will a testator, who left a very small amount of property and a very large family, gave all his property to his wife, to be used and held by her for her own support and the support and education of their minor children until they should become of age, and until she should die or remarry, the balance of said estate at her death or remarriage to be divided among the children. The will stated that it was expressly intended that the wife should have the full right and power to hold the property·and the testator's business, and carry on the same, in the same manner as he could do were he living, and that she should have the right to sell and dispose of any and all of the property as she might deem best for the use and purposes aforesaid. *Held*, that the will gave her power to mortgage the property as well as to sell and convey it. [Whether a simple power of sale will authorize a mortgage, not determined.]

2. The common-law rule that where a person has both an interest and a power, a conveyance by him which contains no apt words indicating an intent to exercise the power will be held to be merely a conveyance of the interest, and not an execution of the power, was not changed by sec. 2149, R. S. 1878, providing that "every instrument executed by the grantee of a power, conveying an estate or creating a charge, which such grantee is authorized by the power to convey or create, but which he would have no right to convey or create, unless by virtue of his power, shall be deemed a valid execution of the power, although such power be not recited or referred to therein."

3. A mortgage, executed by a life tenant who was also vested with a power to mortgage the fee, which did not refer to the power and therefore covered only the life estate, may be reformed so as to cover the fee, where both parties thereto intended and agreed that the fee of the land and not the mere life estate should be mortgaged, and supposed that a mortgage in the usual form would be a valid mortgage of the fee under the power.

4. A judgment in such a case, based on findings authorizing a reformation, which foreclosed the mortgage and ordered a sale of the fee, in all respects as though the mortgage had been reformed, but contained no provision specifically reforming it, was substantially a judgment of reformation.

APPEAL from a judgment of the county court of Waukesha county: M. S. GRISWOLD, Judge. *Affirmed.*

This is an action to reform and foreclose two certain mortgages upon the same parcel of real estate. The mortgages, amounting to $2,000, were executed by the defendant *Lucina H. Williams* to H. K. and B. G. Edgerton, assignors of the plaintiff, and were in the usual form, purporting to mortgage the fee of the premises, and were signed simply *Lucina H. Williams.* The mortgaged premises were originally the property of one William P. Williams, the husband of Lucina, who died in March, 1881, testate, and the plaintiff claims that the mortgages should be reformed so as to show that they were executed by *Lucina* under a certain power given her in the will of said William P. Williams. The defendants deny that they were executed under said

power, and claim that only the life estate was covered by said mortgages for the life of said *Lucina.*

The court found, after trial of the action, that William P. Williams died leaving surviving his widow and eleven children, the oldest being about twenty-five years old and the youngest four years old at the time of the father's death; that he then owned the real estate mortgaged, and left a last will, which was duly probated, and which contained the following clause:

"Secondly, I hereby give, devise, and bequeath unto my wife, *Lucina H. Williams,* all the rest and residue of my estate (after the payment of my debts, as aforesaid), to be used and held by her for her own support, and for the bringing up and educating and support of all my minor children until they shall severally become of age (twenty-one years), and until my said wife shall depart this life, unless she shall sooner marry; and at her death the balance of my said estate shall be divided among all my children, equally shared and share alike; and in case of her marriage, then, and in that event, such division of my said estate shall be then made as aforesaid; but in no event shall any such division of my said estate be made until all my said children shall have arrived at the age of twenty years. It is hereby expressly intended by me in this will that my said wife shall have the full right and power to hold my said property and my business, and carry on the same, in the same manner and in accordance with her own judgment and discretion, as I could and would do were I living and present in and about the same. Further, that she shall also have the right to sell and dispose of all and singular of any and all of my said estate, both real and personal, in manner and as she may in her own judgment deem best for supporting herself and family, aforesaid, and carrying on and management of said business, or any other proper business, for said purposes, during the time she may hold and use the same, and

my said wife shall have and hold all my said estate and dispose of any part thereof for the aforesaid use and purposes, and shall have full and complete power and authority to sell and convey the whole or any part thereof."

The court further found that the real estate in question was the homestead of the deceased, and continued to be the home of *Lucina* and the minor children after the death of said Williams; that *Lucina* and the minor children had no other property except the property left by the deceased, and that the income therefrom was small and insufficient for the support of the family and the education of the children, so that it became necessary for *Lucina* to raise money out of the real estate left by the husband for the support of herself and the support and education of the children, and that she was obliged to dispose of nearly all of the estate, except the land described in the mortgages, for such purposes; that, before the execution of the mortgages in question, she raised the money necessary for her support, and the support and education of the children, by mortgaging the land in question, and that said mortgages were released and became merged in the mortgages described in the complaint; that, at the time of the execution of the mortgages described in the complaint, she had been trying to sell said premises to raise money necessary for her support and that of the family, and had been unable to sell the same except at a sacrifice, and that she thereupon executed the mortgages in question for the purpose of raising the money necessary for her support and the support and education of the minor children, and that the consideration of said mortgages was paid to her for such necessary support and education, and so used by her; and, further, that said mortgages were executed and delivered with the intent by all parties to mortgage and convey the fee in said lands as well as the life estate of said *Lucina* under the power given in said will, and that the value of said real estate did not exceed $3,500. It was further found that said *Lucina* has remained unmar-

ried since the death of her husband, and that all the allega-
tions of the complaint were true, and that said mortgages
were effectual to mortgage the fee of said premises, and
that the plaintiff was entitled to the relief demanded in the
complaint.

Upon these findings, judgment of foreclosure and sale
was rendered adjudging sale of the fee of the premises as
against the defendant *Lucina* and the remaining defend-
ants, consisting of the children of said William P. Williams.
From that part of the judgment adjudging that the fee of
the premises be sold instead of the life estate of *Lucina*, the
defendants appeal.

*C. H. Van Alstine*, for the appellants.

*John A. Kelly*, for the respondent, argued, among other
things, that under the will the widow had power to mort-
gage. *Jones v. Jones*, 66 Wis. 310; *Croft v. Bannister*, 9 id.
503; *Marvin v. Titsworth*, 10 id. 320; *Downey v. Bissell*, 4
Fed. Rep. 55; *Giles v. Little*, 13 id. 100; *McCreary v. Bom-
berger*, 151 Pa. St. 322; *Henderson v. Smith*, 62 Fed. Rep.
708; 2 Washburn, Real Prop. (4th ed.), 655; 18 Am. & Eng.
Ency. of Law, 942; *Gordon v. Preston*, 1 Watts, 385; *Water-
man v. Baldwin*, 68 Iowa, 255; Perry, Trusts (4th ed.),
§ 768; *Loebenthal v. Raleigh*, 36 N. J. Eq. 169; *Kent v. Mor-
rison*, 153 Mass. 137; *Lancaster v. Dolan*, 1 Rawle, 231;
*Duval's Appeal*, 38 Pa. St. 112; *Pennsylvania Co. v. Austin*,
42 id. 257; *Zane v. Kennedy*, 73 id. 182; *Watts's Appeal*, 78
id. 370; *Maurer's Appeal*, 86 id. 380; *Campbell v. Foster
Home Asso.* 163 id. 609; Hill, Trustees, 475; *Stroughill v.
Anstey*, 1 De Gex, M. & G. 635; *Page v. Cooper*, 16 Beav.
396; *Ball v. Harris*, 4 Mylne & C. 264; *Adams v. Rome*, 59
Ga. 769; *Colesbury v. Dart*, 61 id. 620; *Starr v. Moulton*, 97
Ill. 525.

WINSLOW, J. The findings of fact were fully proven by
clear and satisfactory evidence, and it is not deemed neces-
sary or profitable to review the evidence to demonstrate

that it supports the findings. The questions remaining for consideration are purely legal, and are two in number, viz.: (1) Did the power given in the will to the widow, *Lucina*, authorize her to mortgage the premises? and (2) If the power to mortgage was granted by the will, then was such power exercised by the execution of mortgages which contained no reference to the power? and, if it was not, could such mortgages be reformed and made effective as valid mortgages upon the fee under the power?

1. The widow was left with a very small amount of property and with a very large family to support. It clearly appears by the will that the testator intended that his widow should have a life estate during widowhood in all the property, and that she should also be clothed with power to use and dispose of all the property left in carrying on a small mercantile business and supporting herself and educating the children, as fully as the testator could do if living. This was really necessary, under the circumstances, and in fact was the only reasonable provision which could be made for her, in default of giving her an absolute fee. The question is, What is the proper construction to be given to the provisions of the will, construing it all together, and giving effect to the manifest intent of the testator as shown by the will, in the light of the surrounding circumstances. *Hopkins v. Holt*, 9 Wis. 228; *Eastman's Estate*, 24 Wis. 556; *Lovass v. Olson*, 92 Wis. 616. Applying this test to the will in the present case, we can entertain no doubt that the intent of the testator was to give his widow power to mortgage the property as well as to sell and convey it. Otherwise she might not be able to educate and support the children, and would not have that full right and power "to hold the property and business" and carry on the same in the same manner as the testator could do if living, and the clear intent of the testator would be defeated. *Kent v. Morrison*, 153 Mass. 137, 10 L. R. A. 756. In so holding, we are

not to be understood as holding that a simple power of sale will authorize a mortgage. This is a question upon which the decisions are not uniform. See Perry, Trusts (4th ed.), § 768; 18 Am. & Eng. Ency. of Law, tit. "POWERS," 940, note 2. We simply construe the language of this will as giving the power to mortgage.

2. The power being established, we proceed to the second question, which naturally divides itself into two questions, namely: Were the mortgages on their face a valid execution of the power? and, If not, was a case made for their reformation, so as to be valid under the power?

The widow had a life estate during widowhood, and a power of sale over the same land. The well-established rule at common law is that where a person has both an interest and a power, a conveyance which contains no apt words indicating an intent to exercise the power will be held to be merely a conveyance of the interest, and not an execution of the power. 4 Kent, Comm. 334, 335; Sugden, Powers, ch. 6, sec. 8; *Mut. L. Ins. Co. v. Shipman*, 119 N. Y. 324. This rule was recognized and adopted in this state in case of a quitclaim deed made by a life tenant who had a power to convey the fee. *Towle v. Ewing*, 23 Wis. 336. It might seem that this rule was changed by sec. 2149, R. S. 1878, which is the same as sec. 51, ch. 85, R. S. 1858, and reads as follows: "Every instrument executed by the grantee of a power, conveying an estate or creating a charge, which such grantee is authorized by the power to convey or create, but which he would have no right to convey or create, unless by virtue of his power, shall be deemed a valid execution of the power, although such power be not recited or referred to therein." The same statutory provision, in substance, exists in New York, and the court of appeals' of that state, in passing upon it in a case almost identical with the one at bar, held that the statute was intended "to provide that, whenever a single power exists under which a grantor may

convey or mortgage real estate, his conveyance is attributable to the exercise of the power," but that it was not intended thereby to change the long-existing rule that, if a grantor possessed an interest as well as a power, his mere conveyance, without reference to the power, would be held to apply only to his interest. *Mut. L. Ins. Co. v. Shipman,. supra.* Such, also, is the apparent effect of the decision of this court in the case of *Towle v. Ewing, supra,* although the statute was not referred to in that case. We are content to adopt this construction, and therefore hold that the mortgages, upon their face containing no reference to the power, only cover the life estate of *Lucina H. Williams.*

This conclusion, however, does not preclude the possibility of reformation of the instruments as between the parties, if a proper case for reformation be made. Such an instrument is fully as susceptible to reformation as any other conveyance, where no rights of third persons have intervened. If the understanding was that the mortgages should be executed under the power granted by the will, and should cover the fee, and by mistake or ignorance of the scrivener they were not made in the proper form to carry out the agreement, then a court of equity has power to reform and enforce them as contemplated and agreed by the parties. Such errors as these are very frequently corrected by a court of equity, and there have been marked examples of the exercise of this beneficent power by this court. *Green Bay & M. Canal Co. v. Hewitt,* 62 Wis. 316; *Silbar v. Ryder,* 63 Wis. 106; *Whitmore v. Hay,* 85 Wis. 240; 2 Pomeroy, Eq. Jur. § 845.

In the present case it was conclusively shown, not only by the circumstances but by direct evidence, that both mortgagor and mortgagees intended and agreed that the fee of the land should be mortgaged, and not the mere life estate, and that they knew that the power to mortgage came from the provisions of the will, and that they supposed that a

mortgage in usual form would be sufficient to make a valid mortgage on the fee under the will. No lawyer was consulted, but one of the mortgagees drew the papers, and did not suppose it necessary to recite the power, but thought an ordinary mortgage would be sufficient. If a court of equity could not relieve the mortgagee under such circumstances, and make the agreement what it was intended to be, it would be a reproach to the law. The court found that the intent of the parties was to execute the power and mortgage the fee, and that by mistake the papers were drawn without reference to the power, and that the plaintiff was entitled to the relief prayed in his complaint, a part of which consisted in the reformation of the mortgages.

We do not find that the judgment contains any provision specifically reforming the mortgages, but it adjudges foreclosure and sale of the fee in all respects as though the mortgages were reformed, and we regard this judgment, under the findings, as amounting substantially to a judgment of reformation.

*By the Court.*— Judgment affirmed.