ERBELDING *et al. v.* MOORE, executrix, *et al.*

1. A will declared: "I desire that my son Flournoy have for his own use the vacant lot on Broad Street in the City of Augusta — now used as a marble-yard, to him and his heirs forever. All the silver, which consists of one dozen large tablespoons, one dozen dessert-spoons, one dozen teaspoons, one large ladle, one large gravy-spoon. If he should die without male issue, it must go to my eldest surviving son." *Held,* that the son took an estate in fee simple to the described lot.

2. The will of the son, Flournoy Carter, gave all of his property to his wife during her life, and at her death to their children then living, or the descendants of children if their parents should not then be in life. Further language used by the testator in his will was, "I authorize her [his widow] . . to sell and convey, privately or otherwise in her discretion and without an order from any court, any or all of my property, to pay debts or make a judicious investment — all property thus taken to be held by her subject to the limitations and provisions set forth in the second preceding item of this will. I also authorize her to exercise her discretion in investing any surplus money that may come to her hands, retaining annually so much thereof as may be required for the reasonable support of herself and my children during their minority." *Held,* that the power to sell and reinvest given to the widow was personal to her, and did not pertain only to the office of the executrix of the will; and such power was not terminated by the widow filing an appraisement of the estate in the office of the ordinary and turning over to herself as life-tenant all the property in her hands as executrix, or by her subsequent marriage prior to the act of 1883 (Civil Code (1910), § 3944).

3. Applying the foregoing rulings to the allegations of the petition brought by the widow of Flournoy Carter for specific performance of a contract of sale made by her for reinvestment under the power given her in his will, and to the defendants, the demurrer to the petition was properly overruled.

No. 1688. SEPTEMBER 17, 1920.

Petition for specific performance. Before Judge Black (of the city court). Richmond superior court. October 3, 1919.

Mrs. Mattie ·Massengale brought suit against E. J. Erbelding and Henry H. Cumming, for specific performance of a contract by which she sold to the defendants, and they purchased from her, a vacant lot on Broad Street, in the City of Augusta, Georgia, known as "The Marble Yard." The substance of the petition, in so far as it is material here to state, is to the effect that petitioner is the sole and qualified executrix of the will of Flournoy Carter, probated July 24, 1873, wherein a life-estate in all of the property of the testator was devised and bequeathed to her. Amongst the property was a vacant lot on Broad Street, used for many years as a marble-yard; this lot was devised to petitioner's husband, Flournoy Carter, by his mother, Martha M. Carter, in her will dated November 3, 1871, and probated in April, 1872, in which Flournoy Carter was named as the executor, and he qualified as such. The petition sets out the first item of the will of Mrs. Martha M. Carter as follows:

" I desire that my son Flournoy have for his own use the vacant lot on Broad Street in the City of Augusta—now used as a marble-yard, to him and his heirs forever.

All the silver, which consists of one dozen large tablespoons, one dozen dessert-spoons, one dozen teaspoons, one large ladle, one large gravy-spoon. If he should die without male issue, it must go to my eldest surviving son."

The petition also contains the second and third items of the will of Flournoy Carter, as follows: (2) "I give, devise, and bequeath unto my beloved wife, Martha (generally called Mattie) Carter, all my property, real and personal, for and during the term of her natural life, and at her death to vest in and be equally divided among my children then living and the descendants of such of them as may die before her, leaving issue — descendants to represent their parent and take the parent's share; but if none of my children or descendants of deceased children are in life at the death of my wife, it is my will and I direct that said property or whatever may then represent it be equally divided among my brothers Cary (otherwise called Mason) Carter and Barron Carter, and my sister Sophia F. Johnson, or their lineal heirs, according to the statute of distributions of this State."
(3) "I nominate and appoint my said wife executrix of this my last will and testament, and I authorize her at her convenience

to file in the proper office an inventory of my estate, without appraisement, also to sell and convey, privately or otherwise in her discretion and without an order from any court, any or all of my property, to pay debts or make a judicious investment — all property thus taken to be held by her subject to the limitations and provisions set forth in the second preceding item of this will. I also authorize her to exercise her discretion in. investing any surplus money that may come to her hands, retaining annually so much thereof as may be required for the reasonable support of herself and my children during their minority."

The allegations of the petition are to the effect that there were born to the petitioner and her husband, Flournoy Carter, two children, both daughters, one of whom married one Boyce, and who has since died without issue. The remaining daughter married one Moore, and is now in life without issue. Petitioner, on November 5, 1881, "made an inventory of the .estate of Flournoy Carter, including the marble-yard on Broad Street, then occupied by T. Markwalter, and valued at $3,000, and in said inventory recited as follows, to wit: 'and whereas, his (Flournoy Carter's) said wife, after turning over to herself as life-tenant all the said estate, married Henry T. Massengale on June 1st, 1881, and now desires to file an inventory of testator's estate to show what came into her hands as executrix.' " A full description of the marble-yard lot is set out, and with respect thereof it is alleged that there are no substantial improvements on the lot of any value, that for many years it has been rented and used as a marble yard at a very small rent, that it has proved an expense and burden to petitioner, that the taxes and other charges for street improvements are in excess of any revenue possible to be derived from it, and that in consequence it is unprofitable, and that it is to the interest of the trust estate to sell the same and reinvest the proceeds as was permitted by the terms of the will of Flournoy Carter, and to do this she, on June 5, 1919, entered into an agreement with the defendants " to sell and convey unto them as tenants in common, in equal shares, the said lot, for which the said Cumming and Erbelding agreed to pay petitioner the sum of five thousand, two hundred and fifty dollars in cash, and without interest, upon the delivery of a deed to said property with full warranty of title, all taxes, water-rents, municipal assessments, ·

and other similar charges to be prorated between the vendor and the vendee as of the date of the delivery of said deed. It was further stipulated that 'the covenant on the part of the said Erbelding and Cumming to buy the said property is not to be binding upon them unless the said vendor has a good and marketable title to said property, or a full, complete, and unquestionable power of disposal over the same.' " The petition further states that such " agreement to sell was made without order of the court, and with the representation by petitioner that she could and would make a good and marketable title to said lot; that the price agreed upon is fair and adequate, and that it is to the interest of the trust estate to carry out the sale;" that defendants have declined to take and pay for the property or carry out the agreement, contending that petitioner had no legal power or authority to sell the lot either with or without the order of court, "both because her office of executrix of her said husband's will abated upon her marriage, June 1st, 1881, to Henry T. Massengale, and that the powers conferred upon the executrix in the third item of said will of said Flournoy Carter are powers conferred upon the office of executor, and not upon petitioner, and therefore, if sufficient for that purpose, can not be legally exercised by her in the sale of said marble-yard lot as under said agreement with said Erbelding and said Cumming she contracted to do." The petition alleges, "that under the terms of the third item of the will of said Flournoy Carter she holds the property of said estate, including said marble-yard lot, in trust for the uses and purposes set forth in the 2d item of said will as an individual, and not as executrix; that the duties imposed and the powers given to her as executrix in said will constitute her a trustee, and do not belong to the office of executrix merely; and that as such trustee, the provisions of the will authorize the sale of this property by petitioner in the manner contracted for with the said Erbelding and Cumming." There is a prayer for specific performance of the contract of sale and purchase of the marble-yard lot, and that defendants be required to accept a conveyance by petitioner to the same in accordance with the terms of the contract, and to pay to petitioner the amount of the agreed purchase-price. A copy of the contract signed by Mrs. Massengale and the two defendants is attached to the petition as an exhibit.

Defendants demurred to the petition, on the ground that it set forth no cause of action, as it appears therefrom that petitioner can not convey a good and indefeasible-title to the defendants, because it appears that her testator himself had only a life-estate in the marble-yard lot; and even if he had an estate in fee, he in his will devised only a life-estate to petitioner, and as a life-tenant she has no power of disposal over the lot, and her powers and functions as executrix have terminated by lapse of time, and by an assent to the passing of the legacy. The demurrer was over-ruled, and the defendants excepted. Pending the case in the Supreme Court, after the argument thereof, the defendant in error, Mattie Massengale, died, and upon motion of her counsel, and with the consent of counsel for plaintiff in error, Julia F. Moore, executrix of the will of Mattie Massengale, was made a party defendant, and the case ordered to proceed against her as such executrix.

*Cumming & Harper,* for plaintiffs in error.

*Callaway & Howard,* contra.

Fish, C. J. (After stating the foregoing facts.)

1. It is clear from the language used in the first item of the will of Martha M. Carter that she intended to devise to her son, Flournoy Carter, an estate in fee simple to the vacant lot on Broad Street in the City of Augusta, used as a marble-yard, and that the words there used did convey to him such an estate in that lot. The expression, "have for his own use" the marble-yard lot "to him and his heirs forever," manifestly indicates the intention of the testatrix with respect of the marble-yard lot, in contradistinction to intention with respect of the silver mentioned in the same item, the disposition of which was probably controlled by the desire to have it kept in the channel of the blood bearing the family name.

2. The power given in the will of Flournoy Carter to his widow to sell and reinvest the proceeds in other property, "to be held by her subject to the limitations and provisions set forth in the second preceding item of this will," was given to her in her personal capacity, and not as executrix. The power given her to sell and make judicious reinvestment clearly contemplates that if there should be any estate remaining after the payment of the debts, it should constitute the life-estate of the widow; and as

long as she lived the estate, any or all of it, might be sold and conveyed, and other property substituted and held under like trust, whenever, in the discretion of the life-tenant, a judicious investment required such sale. Whether, when the life-tenant, by filing the appraisement of the estate in the office of the ordinary, and turning over to herself as life-tenant the property in her hands as executrix, the office of executrix was thereby vacated, or whether, upon her marriage with Massengale on June 1, 1881, her letters testamentary were thereby revoked, and her powers as executrix abated, nevertheless, so long as she lived, she had the right to the exclusive possession and control of the estate and the express right and power, unlimited in the manner as well as in the time of its exercise, to sell and convey, for the purpose of making a judicious reinvestment, the property sold by her to the defendants. See *Scholl* v. *Olmstead*, 84 *Ga.* 693 (11 S. E. 541); *Simmons* v. *McKinlock*, 98 *Ga.* 738 (26 S. E. 88). We accordingly hold that the court properly overruled the demurrer to the petition.

*Judgment affirmed. All the Justices concur.*