Argued at Pendleton May 8; affirmed June 18, 1935.

ANDERSON *v.* ANDERSON ET AL.

(46 P. (2d) 98)

P. W. *Mahoney,* of Heppner, for appellants.

*John Kilkenny* and *James R. Raley,* both of Pendleton (Raley, Kilkenny & Raley, of Pendleton, on the brief), for respondent.

BAILEY, J.   Invoking the aid afforded under the declaratory judgment act, §§ 2-1401 to 2-1416, inclusive, Oregon Code 1930, the plaintiff, Hilma Marie Anderson, seeks a determination of her rights and powers under the will of her late husband, Frank Anderson. Named as defendants are her two minor children, Frank Anderson, Jr., and Louise Carolina Anderson, who on March 7, 1935, the date of the institution of this proceeding, were of the ages of 17 and 16 years, respectively.  They are represented in the proceeding by their duly appointed guardian *ad litem.*

On September 2, 1919, Frank Anderson executed his last will and testament. After stating therein his age and residence and that it was his wish that all his just debts and funeral expenses be duly paid, the testator made the following disposition of his property:

"Second—I give, devise and bequeath unto my beloved wife, Hilma Marie Anderson, all the property, real, personal and mixed, of which I die possessed, so long as she shall remain my widow, relying upon her to properly rear, nurture, and educate our two children, Frank Anderson, Jr., and Louise Carolina Anderson. In case my said wife, Hilma Anderson, should again marry, it is my will that she then take for her sole use and benefit one-half of all the property then remaining from my estate and that my two children above named each receive one-fourth of the property then remaining from my estate.

"Third—It is my will, and I hereby direct, that my executrix shall have the right and power to sell, transfer and convey any and all of the property belonging to my estate, as in her judgment shall seem best, and to reinvest the proceeds, if she shall deem it advisable, in other property or securities, and to use such of the said proceeds as she may deem necessary in support of herself and our two children above named. And it is my will that she make such sales without the order of any court, making such return thereof as may be required by law."

After making the foregoing provisions the testator nominated his wife executrix and directed that she act as such without bonds. This will was made a few days before, and in contemplation of, a surgical operation to be performed upon Frank Anderson, from which he did not recover. He died sometime in the latter part of the year 1919. His will was duly admitted to probate and his widow, plaintiff herein, was appointed executrix. The estate was closed in the year 1920, and the executrix thereupon discharged.

At the time of executing this will Frank Anderson was 49 years of age. He was a farmer in Morrow county, with large holdings of land and in comfortable financial circumstances. He had made it a practice in business transactions to consult his wife and had complete confidence in her business ability. The testimony shows that she was thrifty and displayed sound judgment in such expenditures as she made, of which fact her husband was well aware.

The plaintiff appears to have managed well the property received by her, until the general business crisis, when she became unable to pay the taxes on the farm property. Taxes for the year 1930 and subsequent years, amounting to a sum in excess of $3,272.50, are unpaid, and the plaintiff personally is indebted to

various persons, firms and corporations, in a sum in excess of $8,200. In order to pay the taxes and her individual indebtedness she applied to the Federal Land Bank of Spokane for a loan and offered as security a mortgage on part of the real property belonging to the estate of her late husband. The loan was approved as to amount, but was refused solely on the ground that the right of plaintiff to mortgage the property was questioned.

The record reveals that the real property can not be sold at this time, except at a great sacrifice. Almost as much can be realized on a secured loan as on a sale. Unless some of the property can be sold or mortgaged to raise the money necessary to pay the taxes and plaintiff's indebtedness, all of the realty will be sold for delinquent taxes by the sheriff and by plaintiff's creditors.

It is the plaintiff's contention that under the terms of the will she was given the absolute fee simple title in and to all the real property of which her husband died seized, subject only to defeasance of an undivided one-half thereof upon her possible remarriage. She further urges that until such time as she may remarry she is granted the power to sell and convey an absolute fee simple title to said property or to give a valid mortgage on all or any part of it, unaffected by such possible defeasance.

The defendants through their guardian *ad litem* argue that the plaintiff has neither the power to convey nor to encumber the fee simple title to the real property; that the third paragraph of the will granting the power to sell or convey the property was limited to the plaintiff in her capacity as executrix of the will; and that since the estate has been fully administered and she has been discharged as such executrix the power

to sell has been withdrawn. It is further contended by the defendants that even if it be assumed that the power granted by the third paragraph of the will, to sell the property, was intended to be conferred upon the plaintiff in her individual capacity, rather than as executrix, the terms of the grant did not in any event include the power to mortgage.

■ The first question presented is whether the plaintiff was by the will given merely a life interest in the real property of her late husband, or the absolute fee simple title, subject to be divested of an undivided one-half of such property upon her remarriage. According to the second paragraph of the will the testator gave, devised and bequeathed to his wife, Hilma Marie Anderson, all the property, real, personal and mixed, of which he died seized, so long as she should remain the widow of testator, and in reliance upon her to "rear, nurture and educate" properly their two minor children. He then provided that in the event she "should again marry, it is my will that she then take for her sole use and benefit one-half of the property *then remaining* from my estate, and that my two children above named each receive one-fourth of the property *then remaining* from my estate". [Italics supplied.] No provision is made for any disposition of the property upon the death of testator's widow.

In construing provisions of a will similar to those contained in the second paragraph of the instrument here involved, the supreme court of Wisconsin in *Re Baird's Will*, 171 Wis. 215 (177 N. W. 23), stated:

"It can be logically argued that the words 'so long as she remain my widow' are words of duration; that she could not remain a widow longer than during the term of her natural life; and therefore that she at most took a life estate. Treating the words 'I give and

devise to my wife' as equivalent to the words 'I give and devise to my wife, Elizabeth, and her heirs', that is, as conveying, when used, without limitation an estate in fee simple, there is no language in the will that indicates any intent on the part of the testator to limit the gift except under one contingency, and that is the remarriage of his wife. Except for that, the estate is absolutely hers. While it is a difficult matter to be certain that the actual intent of the testator is arrived at, we are of the opinion that the trial court was correct in holding that the words were used to create a condition, and that the widow took an estate in fee simple subject to be divested only by her remarriage.''

It is difficult to reconcile the various cases holding that under language closely similar to that used in the will here in review the widow acquires only a life estate, with those holding that she takes an estate in fee simple subject to be divested only by her remarriage. Running through all the decisions is the fundamental proposition that wills must be so construed as to carry out the intention of the testator. In many of the cases holding that the widow acquires only a life interest we find testamentary provisions disposing of the property upon her death, but no such provision is involved in this proceeding. As was observed in the case of *Vaughn v. Converse,* 184 Iowa 891 (169 N. W. 144):

''The guiding criterion is the intention of the testator, as it can fairly be gathered from the terms of the will. In the *Busby* case, [Busby v. Busby, 137 Iowa 57, 114 N. W. 559] the will devised to the wife, with a further proviso that she should remain unmarried. In the event that she remained unmarried, no provision was made for the disposition of the remainder after her death. We found that the intent of the testator was to devise a fee, subject to the condition. In the *Brunk* case, [Brunk v. Brunk, 157 Iowa, 51, 137 N. W. 1065] the will devised the property to the wife 'so long as she

remains my widow'. It also devised the remainder of the estate 'after the remarriage' and also 'after the death' of the wife. The same was true in *Price v. Ewell,* 169 Iowa 206 [151 N. W. 79]. In those cases we found that the manifest intent of the testator was to devise to the wife a life estate only. The disposal of the remainder after the death of the wife was a suggestive indication of such intention. In the case before us, the will devises the remainder in the event of the *remarriage* of the wife, but makes no disposition of the remainder in the event of the *death* of the wife without remarriage. We think, therefore, that the case must be classified with the *Busby* case, and that it must be found that the testator intended to devise a fee, subject to the condition against remarriage.''

The better reasoned and more recent authorities incline to the view that in instances similar to the one before us, in which the devise is to the widow conditionally and there is no disposal of the remainder upon her death, the widow takes the fee simple title to the real property, subject only to be divested upon the happening of the contingency mentioned: *Staack v. Detterding,* 182 Iowa, 582 (161 N. W. 44, L. R. A. 1918C, 856); *Fidelity Trust Company v. Bobloski,* 228 Pa. 52 (76 Atl. 720, 28 L. R. A. (N. S.) 1093); *Becker v. Becker,* 206 Ill. 53 (69 N. E. 49); *Little v. Giles,* 25 Neb. 313 (41 N. W. 186); *Will of Weymouth,* 165 Wis. 455 (161 N. W. 373); *Weymouth v. Gray,* 167 Wis. 218 (167 N. W. 270); *Glass v. Johnson,* 297 Ill. 149 (130 N. E. 473); *McCall v. Umbenhauer,* 270 Pa. 351 (113 Atl. 423); 69 C. J., page 483, § 1557; § 10-528, Oregon Code 1930.

We hold that the plaintiff, Hilma Marie Anderson, was, under the will of her late husband, devised a fee simple title in and to all the real property of his estate, subject to be divested of an undivided one-half thereof only in the event of her remarriage. The entire real property would, upon her death without remar-

riage, pass to her heirs, or, in event of a will, to her devisees.

■ The next question that arises is whether the plaintiff, under the terms of the will, is granted power to sell and convey the fee simple title in and to this realty. The third paragraph of the will gives to the "executrix" the "right and power to sell, transfer, and convey any and all of the property belonging to my estate, as in her judgment shall seem best, and to reinvest the proceeds, if she shall deem it advisable, in other property or securities, and to use such of the said proceeds as she may deem necessary in support of herself and our two children above named". It is contended by plaintiff that the word "executrix" is used merely as *descriptio personae* and that it was the intention of the testator to grant to his widow in her individual capacity, and nót as executrix only, the right to sell any or all of the real property.

In *Ullrich v. Ullrich,* 189 Iowa 868 (179 N. W. 176), the will contained the provision that "if for any reason my wife as executrix thought best to sell the town property, she shall have the right to do so, and to use the proceeds from the sale for any necessary purpose or to reinvest in other property". The court, after pointing out that the necessity for the sale of the property and the use of the proceeds existed as much after the administration was completed as before that event, held that under all the circumstances there involved the testator intended to confer upon the widow in her individual, and not her respresentative, capacity the power of sale. To like effect see *Crews v. Crews,* (Mo. Sup.) 240 S. W. 149, in which the court held that the word "executrix" was merely *descriptio personae;* and *Erbelding v. Moore,* 150 Ga. 445 (104 S. E. 225).

It is, however, unnecessary to construe the language of the third paragraph of the will as conferring upon the widow in her individual capacity rather than as executrix the right to make use of and dispose of the realty as she might deem advisable. The wording of the third paragraph is nevertheless helpful in ascertaining what the testator actually had in mind in framing the will as he did. He undoubtedly felt that his widow, to provide for the needs of herself and their two infants, the older then not over two years of age, might be faced with the immediate necessity of selling a part or all of his holdings to obtain funds. Therefore, he granted to her, as "executrix", almost unlimited power in the disposal of the property belonging to his estate and the use of the resulting proceeds from any sale she might make.

It is unreasonable to believe that the testator did not also foresee that his widow would be confronted with as grave, if not more serious, problems after the estate was closed, as during its administration. We shall, therefore, ascertain whether there is anything contained elsewhere in the will with reference to the powers of the widow relative to her use and disposal of the real property after the close of the administration and her discharge as executrix.

That it was the intention of the testator that his widow should have the power in her individual right to sell and dispose of the real property is plainly evidenced by the second paragraph of the will, wherein it is provided that in case she remarries it is the will of the testator that she take for her sole use and benefit one-half of the property *then remaining*, and that the two children shall each receive one-fourth of the property *then remaining* from the estate. The use of the phrase "then remaining" clearly indicates that the

testator must have expected that some, at least, of the property might be disposed of by his widow.

In *Young v. Hillier,* 103 Me. 17 (67 Atl. 571), the testator devised to his wife all his real and personal property "for her use during life", and provided that upon her death "whatever may remain of said estates" should be the property of his daughter. It was there held that "by saying only so much of the real estate as might 'remain' at the death of the wife, should pass to the daughter, he expressed his purpose that the use given to the wife should extend to a sale of it, if she wished or needed. Otherwise there is no practical significance in the use of the word 'remain' in this connection".

The same court, in the earlier case of *McGuire v. Gallagher,* 99 Me. 334 (59 Atl. 445), after intimating that the power to sell the property was conferred upon the widow by certain language in the will, observed:

"If anything was needed to strengthen this conclusion, it is furnished by the second item in the will, which directs the disposition of 'the property remaining' at the death of his wife—a plain implication that the corpus of the estate was likely to be diminished during her life. The language is general, as in the first item; applying to realty and personalty, both. There is no devise over of the real estate, or any specific part of the personal. The language is equivalent to the phrase, 'If anything of this estate remains at her death, it is to go over.' Harris v. Knapp, 21 Pick. 412. In that case the devise over was of 'whatever shall remain', and the court said that those words 'necessarily mean that portion of the property bequeathed, which shall be undisposed of at her decease; but there is no allusion in the will to any mode by which the sum thus given is to be diminished, except the disposition thereof to be made by Mrs. Harris, and therefore the implication is irresistible that she had a power to make such disposition.' "

The supreme court of Missouri, in *Mitchell v. Board of Curators,* 305 Mo. 466 (266 S. W. 481), quoted with approval from the opinion in one of its earlier decisions [*Bramell v. Cole,* 136 Mo. 201 (37 S. W. 924, 58 Am. St. Rep. 619)], as follows:

"In determining the intention of a testator, to grant to a tenant for life the power to dispose of the property devised or bequeathed, much weight has been given to the use of words by which the limitation over is confined to what estate remains upon the death of the first taker. Such intention has been held to conclusively appear in case the property devised could only be diminished by a disposition of it by the one to whom the life estate is given. Such declarations are held to be inconsistent with a supposition that the whole property was to remain undiminished in the hands of the first taker."

We also find in 69 C. J., page 828, with reference to whether a tenant for life has any right to dispose of the property, the following statement:

"Such power is impliedly conferred upon a life tenant by a gift over, at his death, of 'whatever shall remain', or 'so much as may be left', or the like, except where, from other words or provisions of the will, it appears that such power was not intended to be conferred * * *."

Authorities from many states are there cited. See, also, *Johnson v. Battelle,* 125 Mass. 453; *Morel v. Oakley,* 253 Pa. 107 (97 Atl. 1029); and *Roberts v. Lewis,* 153 U. S. 367 (38 L. Ed. 747, 14 S. Ct. 945).

Many of the cases to which we have referred in this connection had to do with life estates, but we see no reason why the same rule for construing the will should not apply to instances in which a qualified or base fee is devised. Taking this will in its entirety, it is reasonable to infer, and we hold, that the testator intended

to confer upon his widow full power and authority to dispose of all the real property of the estate and to transfer the fee simple title thereto by sufficient deed of conveyance. This conclusion is greatly strengthened when we consider the purpose of the testator as expressed in the third paragraph of the will, to the effect that so much of the corpus of the estate as necessary should be used in the support of his wife and children. By devising to his widow all the property belonging to his estate, the testator made no distinction between realty and personalty. He placed no restraint on his wife in the use or disposal of any of such property. Although in the third paragraph of the will he provided for the use of so much of the proceeds realized from sales by the executrix ''as she [his widow] may deem necessary in support of herself and our two children'', by the terms of the second paragraph, wherein he devised all his estate to his wife, ''so long as she shall remain my widow'', he did not refer to the use of the proceeds of any sale to support her and the children, but stated that he relied ''upon her to properly rear, nurture and educate'' them. To construe the will as granting to the ''executrix'' the right to sell the property of the estate and use the proceeds to support the widow and minor children during administration, and not to hold that after the close of administration the widow was clothed with as much or more power in reference to such property and its proceeds, would be to disregard the confidence the testator has expressed in his wife and the solicitude he has shown for her and their children.

■ The one remaining question concerning the construction of the will is that of the right of the widow to mortgage the realty. The facts of the case show that the present time is inopportune to sell and that a sale

now would entail a sacrifice. Almost or as much money can be obtained from a mortgage as from a sale of the property. In *Rose City Co. v. Langloe,* 141 Or. 242 (16 P. (2d) 22), involving a will (which is set out in the earlier companion case of *Bussone v. Marsh,* 140 Or. 331 (12 P. (2d) 329)), in which the widow was given a life estate "to hold, own and dispose of, for her own benefit during her entire life", this court held that the widow was granted power to mortgage such estate. The court took into consideration the purposes the testator had in mind in making his will, and the parties to be benefited by it.

One of the cases cited in the opinion of this court was *Hamilton v. Hamilton,* 149 Iowa 321 (128 N. W. 380). In that case the Iowa supreme court went somewhat into detail in distinguishing between the power granted to the holder of a naked trust and that granted to a beneficiary, and held that where the power was granted to the beneficiary to sell, transfer and dispose of certain property, such power also included the right to mortgage. With reference to this matter, it was said:

"Question is further raised whether, under the power given by the will, the plaintiff may mortgage the property. That a mere naked power to sell given to an agent or attorney or to the trustee of any ordinary trust does not include the power to mortgage is well settled by the weight of authority. In such case the power is to be strictly construed and will not be extended to cover an act not clearly within the terms of the instrument by which it was created; but a different rule has often been applied where a testamentary power has been given, not for the benefit or profit of the donor, but in the furtherance of some benefit which the donor confers upon the donee. The language creating such a power is to be liberally construed to promote the purpose or intent of its creation, and, if the power to sell is amplified by other words of broader or more

general meaning, and the circumstances under which the gift is made be not such as to forbid that construction, the authority to mortgage for the purpose expressed in the writing may be inferred. [Citing authorities.]

"Where the power is testamentary in character, the rules governing the construction of wills are to be applied. The intent of the testator is the central question, and its answer is to be found by reading the entire instrument, keeping in view the circumstances under which it was made and the purpose or end which the power was created to serve. Here, as we have already said, the primary and controlling purpose of the will is seen to be the assurance to the husband of proper maintenance and support. To that end power is given to him not only to 'sell' but to 'transfer' and 'dispose of' the property devised. Ordinarily, a mortgage to meet pressing needs would be less inimical to the interests of the remainderman than an absolute conveyance. Its practical effect may be to preserve the life tenant a home and at the same time contribute to his support and maintenance to which the entire estate of the deceased is devoted by the will. The giving of a mortgage for such purpose should in our judgment be upheld by the court as a proper execution of the power conferred by the will."

In addition to the authorities cited in *Rose City Co. v. Langloe,* supra, see also: *Loebenthal v. Raleigh,* 33 N. J. Eq. 169; *Zane v. Kennedy,* 73 Pa. 182; *Pennebaker Home for Girls v. Board of Directors,* 250 Ky. 44 (61 S. W. (2d) 883) ; *Lardner v. Williams,* 98 Wis. 514 (74 N. W. 346) ; *Larson v. Mardaus,* 172 Minn. 48 (215 N. W. 196). In *Lardner v. Williams,* supra, the court said:

"The question is, what is the proper construction to be given to the provisions of the will, construing it all together, and giving effect to the manifest intent of the testator as shown by the will, in the light of the surrounding circumstances. Hopkins v. Holt, 9 Wis. 228; Eastman's Estate, 24 Wis. 556; Lovass v. Olson,

92 Wis. 616 (67 N. W. 605). Applying this test to the will in the present case, we can entertain no doubt that the intent of the testator was to give his widow power to mortgage the property as well as to sell and convey it. Otherwise she might not be able to educate and support the children, and would not have that full right and power 'to hold the property and business' and carry on the same in the same manner as the testator could do if living, and the clear intent of the testator would be defeated. Kent v. Morrison, 153 Mass. 137 (26 N. E. 427).''

In the case at bar the implied power granted to the widow by the testator in the second paragraph of the will, to use and dispose of the real property, is not so limited in scope as that granted to the ''executrix'' in the third paragraph. Had the testator intended any restrictions upon his widow in the use and disposition of this property, such restrictions would undoubtedly have been expressed in the instrument. In order to carry out the manifest purpose of the testator as shown by the entire will and implied therefrom, we hold that the widow had power, in addition to selling and conveying the realty, to mortgage the same.

■ There is in this proceeding an actual controversy between the mother and her minor children regarding the construction to be placed on the will. The provisions of the declaratory judgment act, supra, are sufficiently broad and comprehensive to include a case of this nature: *City of Salem v. Oregon-Washington Water Service Company,* 144 Or. 93 (23 P. (2d) 539); *Lloyd v. Weir,* 116 Conn. 201 (164 Atl. 386); *Des Portes v. Des Portes,* 157 S. C. 407 (154 S. E. 426); *Roberts v. Mosely,* 100 Fla. 267 (129 So. 835).

The decree appealed from is affirmed, neither party to recover costs in this court.

CAMPBELL, C. J., not participating.