ANNA MARIE LOUISA KNOST, Appellant, v. LOUISA KNOST et al.

**Division One, June 14, 1910.**

1. **WILL: Restraint on Marriage.** A provision in a will in total restraint of marriage and cutting down a devise to a daughter, if she should ever marry, to an estate equal to that given to testator's other children, is void.

2. ————: ————: **Freedom: Vested Estates.** Courts often struggle with perplexities to maintain a free right to testamentary disposition, and the right to freely marry subject to reasonable regulations. But conditions subsequent in testamentary devises of real estate, providing for, or obviously and intentionally tending to, a total restraint of marriage by a daughter are odious, tend to encourage immorality and are against the liberty of the law; and where an estate was by the will first vested in testator's daughter by unequivocal provisions, and the provision against her marriage is plainly a condition subsequent, and cuts down her vested estate, the condition is void, and the estate absolute.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel D. Fisher*, Judge.

REVERSED (*with directions*).

*Wm. Hilkerbaumer* for appellant.

(1) The provision of the will is a condition subsequent, upon the happening of which plaintiff's estate is forfeited, that is, diminished from a sole ownership to that of a one-sixth interest; and being in general restraint of marriage, against public policy, and void, the estate vests in plaintiff free from the condition. Walsh v. Mathews, 11 Mo. 131; Williams v. Cowden, 13 Mo. 211; Dumey v. Schaefer, 24 Mo. 170; Witherspoon v. Brokau, 85 Mo. App. 169; Bellairs v. Bellairs, 18 L. R. Eq. 510; Smythe v. Smythe, 90 Va. 639; Randal v. Marble, 69 Me. 311; Jenkins v. Merritt, 17 Fla. 304; Kennedy v. Alexander, 21 App. Cas. (D. C.) 424;

Barksdall v. Elam, 30 Miss. 694; In re Hamilton, 1 Ont. L. R. 10; Perrin v. Lyon, 9 East 170; Water v. Tazewell, 9 Md. 291; Maddox v. Maddox, 11 Grat. (Va.) 804; Phillips v. Ferguson, 85 Va. 511; 2 Jarman, Wills (16 Ed.), p. 893; Chalfaut v. Payton, 91 Ind. 202; Sterling v. Sinneckson, 5 N. J. L. 756; In re Alexander 85 Pac. (Cal.), 308; In re Haight Will, 64 N. Y. S. 1029, 51 App. Div. 310. (2) It is proper in this proceeding to enter a decree declaring the clause in the will to be against public policy and void, and that the defendants have no estate, vested or contingent, therein. Clark v. Ins. Co., 52 Mo. 272; Bank v. Evans, 51 Mo. 335; Foote v. Sanders, 72 Mo. 616; Walsh v. Mathews, 11 Mo. 131; Dumey v. Schaeffer, 24 Mo. 170; 30 Am. and Eng. Ency. Law (2 Ed.), p. 805; R. S. 1899, secs. 650, 651, 652; Ball v. Woolfolk, 175 Mo. 278; Graton v. Lumber Co., 189 Mo. 322; Utter v. Sidman, 170 Mo. 284; Mueller v. Buenger, 184 Mo. 458; Spore v. Land Co., 186 Mo. 656; Burkham v. Manewall, 195 Mo. 500.

LAMM, P. J.—Suit in equity to free a devise in a will from a condition in restraint of marriage. Defendants, summoned, defaulted and the bill was taken as confessed. *Non obstante,* on the merits, the decree went against plaintiff and the cause comes up on appeal.

The facts follow: Anton F. Knost died testate, a resident of St. Louis, leaving a widow, Louisa, six children (parties hereto, all adults) and seized of an estate real and personal.

By item one of the will he devised his residence and certain personal property to his wife Louisa for life with remainder over to plaintiff, Anna Marie Louisa, his eldest daughter.

By item two certain lots in Shrewsbury park in the county of St. Louis were devised to Anna Marie Louisa.

By item three he gave each of his six children a bequest of $2000, with certain directions as to time of payment, investment, etc.

By item four the testator made directions about repairs and taxes on the residence devised to his wife. It was also provided that she, in lieu of dower, should receive for life one-half the income of his whole estate after paying taxes and repairs on his residence and the bequests to his children. Anna Marie Louisa was then made *residuary* legatee, executrix without bond, and donated power to sell personal assets in accordance with her judgment. One Tontrup is made executor, if Anna Marie Louisa should die before final settlement.

The clause on which the case hinges then follows, *viz.:* "In the event of the marriage of my said daughter Anna Marie Louisa, she is to receive only the same proportion of my estate as each of the other children, and in that event, the income and revenue of my entire estate, after payment of taxes, repairs and insurance on said property, after setting aside the two thousand dollars bequeathed to each of my children, shall be paid to my said wife Louisa, during her lifetime, and the remainder of my estate shall be equally divided among my said children, share and share alike."

Plaintiff served as executrix, made final settlement, and has not married. The total value of testator's estate is not shown, but it does appear that the estate of Anna Marie Louisa is cut down appreciably by the provision relating to marriage—*i. e.*, if she does not marry she gets a larger estate than if she does marry.

The point in judgment is single and narrow. We all agree the provision is void. This, because:

(a). While marriage is considered by our statute law a civil contract (R. S. 1899, sec. 4311) yet (in a comprehensive sense) it is something more, *viz.*, it creates a *status* in which the State has a vital interest both in its creation and dissolution. Matrimony is a *status* so

vital to the welfare of the State and society that, in the laws of some civilized nations, and in the opinion of many people of refined sensibilities in all civilized nations, it is a holy sacrament and draws tenderness, beauty, health and vigor from the solemn sanctions of religion itself. This is shadowed forth by our statute permitting marriage to be solemnized by ministers of the Gospel. [R. S. 1899, sec. 4314.] Doubtless even those who stickle for the view that marriage is a mere civil contract, and not a whit more, would hestitate to strip it of the sentimental significance of grounding it on, or, more accurately speaking, solemnizing it by, religious rites as our present statute allows. It was said of an old Greek, whose name I have forgotten, that, being shipwrecked, and swimming to an unknown shore, he presently discovered geometrical figures sketched upon the sand whereat he fell upon his knees and thanked his gods that in his extremity of fortune he had reached a land inhabited by Greeks. If such reasoning castaway had reached a land where there was no regulation of marriage by manners, maxims, customs, ordinances and laws, he would have known by that token he had come to one of stark savagery or barbarism.

The old Roman maxim was that marriage ought to be free. *Matrimonia debent esse libera.* [2 Kent Com. 102.] The Roman idea was broad enough to include voluntary divorces, with the voluntary right, following the voluntary divorce, to take another wife— a loose application of the maxim utterly abhorrent to modern civilization as a whole—one now entertained only by those whimsical and inconsequent dreamers who, amusing themselves with theories beyond the boundary of common sense, like Dr. Holmes's silly hen that often cackled when she laid no egg, cackle when they revamp some out-worn and exploded notion, and dub it reform, progress or what not.

But the Roman maxim involved the idea of freedom on another side, *viz.*, the right to freely marry, subject to reasonable regulations, and this wise view of it has come down to us as a settled and cherished doctrine.

Says Montesquieu (Montesquieu's Spirit of Laws, Nugent's Translation, vol. 2, book 23, chap. 21): "By the ancient institutions, the natural right which every one had to marry, and beget children, could not be taken away. Thus when they received a legacy, on condition of not marrying, or when a patron made his freed-man swear, that he would neither marry nor beget children, the Papian law annulled both the condition and the oath. The clauses, 'on continuing in widowhood,' established amongst us, contradict the ancient law, and descend from the constitutions of the emperors, founded on ideas of perfection." The learned author naively adds (by way of philosophical reflection): "God forbid, that I should here speak against celibacy, as adopted by religion; but who can be silent, when it is built on libertinism; when the two sexes corrupting each other, even by the natural sensations themselves, fly from a union which ought to make them better, to live in that which always renders them worse? It is a rule drawn from nature, that the more the number of marriages is diminished, the more corrupt are those who have entered into that state; the fewer married men, the less fidelity is there in marriage; as when there are more thieves, more thefts are committed."

I find the real philosophy of the matter nowhere formulated in a sounder, or more scholarly disquisition than in note "q" to sec. 10, book 1, Fonbl. Eq. (4 Am. Ed. by Laussat), p. 196, *viz.*: "It may be laid down as a fundamental proposition, that marriage ought to be free; by which is intended, that as the parties contracting are principally interested in the contract, they ought to possess all those faculties which are requisite

to the validity of every other species of contract, which Puffendorff defines to be 1st. A physical power; 2d, A moral power of consenting; 3d, A serious and free use of them; the rather, as the contract of marriage is connected with more important consequences than any other species of contract, insomuch as it is less easily dissolved; and though dissolved, if there be children, many of its consequent ties remain. But though it be true, that freedom from restraint, as it encourages this species of contract, is of importance to the State, it must not be considered as a principle to be pursued to its whole extent, and at every hazard; for if it were, it would be found that this principle, the well-regulated and bounded influence of which is capable of inducing real benefit to society, is, in its excess or abuse, like other good principles, destructive of the very interests which it professes to consult. The claims of parental authority, controlled as they are by the law of England, merit considerable respect; nor has the right which individuals have of qualifying their bounty been disregarded. *The only restrictions which the law of England imposes, are such as are dictated by the soundest policy, and approved by the purest morality;—that a parent professing to be affectionate shall not be unjust; that professing to assert his own claim, he shall not disappoint or control the claims of nature, nor obstruct the interests of the community; that what purports to be an act of generosity, shall not be allowed to operate as a temptation to that which militates against nature, morality, or sound policy, or to refrain from doing that which would serve and promote the essential interests of society;* are rules which cannot reasonably be reprobated as harsh infringements of private liberty, or even reproached as unnecessary restraints on its free exercise. See Puff., Law of Nature and Nations, b. 6, c. 2, s. 14. On these considerations are founded those distinctions which have, from time to time, been recognized in our courts of equity, re-

specting testamentary conditions, with reference to marriage.''

In applying such general propositions, courts meet with many perplexities in struggling to maintain the free right to testamentary disposition while at one and the same time preserving the free right to marry. There have been in some cases introduced subtleties and refinements in distinguishing between conditions precedent and conditions subsequent, between conditions and limitations, between devises of real estate and bequests of personal property and ''gifts over,'' so that the line of demarkation between void conditions and reasonable limitations does not always run plain and true in case-made law.

Speaking to the point, by way of summary, Pomeroy well deduces from the cases the following propositions as live verities of modern law (2 Pom. Eq. Juris. [3 Ed.], sec. 933): ''1. It is ordinarily said that all conditions annexed to gifts which prohibit marriage generally and absolutely are void and inoperative. This, however, is a very inaccurate mode of statement, since a condition precedent annexed to a devise of land, even if in complete restraint, will, if broken, be operative and prevent the devise from taking effect. With this limitation all conditions in general restraint are void. Also, if a condition is not in absolute restraint, but is of such form that it will probably operate as a general prohibition, it is, under the same limitation, void. 2. On the other hand, conditions annexed to testamentary or other gifts, in partial and reasonable restraint of marriage, are valid and operative; such, for example, as that a devisee or legatee should not marry under age, or should not marry without the consent of parents, guardians, or trustees, or should not marry a particular person, or a person belonging to a particular religious communion. In the application of these two propositions, certain special rules have been settled with more or less certainty, depending upon the

facts of the condition being precedent or subsequent, of there being, or not, a gift over upon its breach, and of the original gift to which the condition is annexed being one of real or of personal estate. The system which has been developed is a partial compromise between the technical common-law rules concerning conditions, and the doctrines of the Roman law, which made void all attempts to restrict the perfect freedom of marriage; and, like most compromises, it has some incongruous features. If a condition is precedent and annexed to a gift of land, it operates as at the common law; when broken, it prevents the estate from vesting, whatever be its nature; when annexed to a gift of personal property, if general or unreasonable, it is wholly void, and the gift takes effect; if partial and reasonable, it .is operative. When a condition is subsequent and annexed to a gift of land, if general, it is void, and although broken, the estate of the donee continues; if partial and reasonable, it is operative, and on its breach the estate of the donee is defeated. When a subsequent condition is annexed to a gift of personal property, if general, it is void; if partial and reasonable, and there is a gift over, it is operative, and upon its breach the interest of the first donee ceases, and the gift over takes effect; but if there is no gift over, then the condition is said to be *in terrorem* merely, and is inoperative."

Subject to the modifications thus suggested, it may be said that contracts in restraint of marriage are in the teeth of reason and public policy, tend to immorality by subverting nature, and are void; that conditions subsequent in deeds and testamentary devises of real estate providing for, or obviously and intentionally tending to, a total restraint of marriage are odious and held to the utmost rigor and strictness; that conditions precedent are sustained because they prevent the es-

tate from vesting, which is in accord with the free right of testamentary disposition; and that on the nice points of learning which arise in the application of the law to concrete cases, the courts lie under a bounden duty to feel for the intent of the testator to see if it contravenes public policy.

There is only one main qualification to the rule against total restraint of marriage and that is an exception touching widows. (See the excerpt from Montesquieu's Spirit of Laws, supra.) It seems settled law that men have a sort of mournful property right, so to speak, in the *viduity* of their wives and that a grant or devise to them may be defeated by the violation of a condition subsequent providing for the grant or devise becoming inoperative or reverting in case of remarriage. The exception has been put on sundry grounds, and courts have not always been able to find common reasons to sustain it. But it has been long established and is almost universally followed. It is the rule in this State. [Walsh v. Mathews, 11 Mo. 131; Dumey v. Schoeffler, 24 Mo. 170; Gaven v. Allen, 100 Mo. 293; Chrisman v. Linderman, 202 Mo. l. c. 623 *et seq.*]

It is a curiosity in the law that when the boot is on the other foot and a wife makes a grant, which by condition subsequent is to be defeated on the remarriage of her husband, the general doctrine that conditions in restraint of marriage are void as *contra bonos mores* has been applied with vigor (see, for example, Waters v. Tazewell, 9 Md. 291), though the English rule seems to be the other way (2 Jarman on Wills [6 Ed.], 886), and there are later decisions following the English rule. [2 Pom. Eq. 933, supra.] Solid ground for any distinction between husband and wife in this regard is hard to make out. It was once tartly but shrewdly remarked by a pundit of the bar that the distinction now up may have its root in the fact that *men* both make and construe the law and women stand

voiceless in that behalf. Whether this be so or not may be left to the decision of some cases involving the point. We need not meddle with it, for no exception or incongruity militates against the general rule.

(b). Applying the general doctrine of paragraph *a,* it is apparent at once that an estate first vested in Anna Marie Louisa by unequivocal provisions of the will; that the provision against marrying is plainly a condition subsequent; that it cut down her vested estate and, being void (as obviously and of set purpose in restraint of her marriage) it must be brushed to one side, leaving the undiminished estate standing. Says Sheppard (1 Sheppard's Touchstone, Hilliard's Am. Ed., *132): "And hence also it is that such conditions as are against the liberty of law, as that a man shall not marry or the like, are void. . . . And in all these cases if the condition be subsequent to the estate, the condition only is void, and the estate good and absolute; if the condition be precedent (this, as frequently observed, is a limitation, not a condition), the condition and estate both are void for an estate can neither commence nor increase upon an unlawful condition." To this we may add that neither may a vested estate *decrease* on an unlawful condition subsequent. These conclusions determine the case.

The learned chancellor held the will produced equality among the children of testator if the condition be enforced in case of the marriage of Anna Marie Louisa. Therefore, the condition was not void. But we cannot allow that conclusion. The equitable maxim, Equality is equity, if applied to wills with unaccommodating strictness in all cases, would subvert most of them. A will may not be condemned because it suggests inequality, at first blush, on the face of the instrument; nor may a condition, made void by the policy of the law, be sustained in equity because it may at first blush result in equality. The very object of any testamentary disposition of property whatever is that

inequality, that is, an unequal division of testator's estate, may spring; for this apparent inequality is but the result of domestic equities known to the testator, which he may enforce by giving to one child one amount and to another a different one. [Conner v. Skaggs, 213 Mo. l. c. 348-9.]

In the will in question the restraint on marriage was total. It was not leveled at marriage to a given person or to a communicant of a given church, or limited to a certain age or to a reasonable time. Any marriage whatever, however appropriate, at any time however reasonable, to any person however suitable, took from Anna Marie Louisa a part of the estate vested in her by the will. Testator had no right to coerce the daughter in that way against nature. It was clearly *in terrorem* and therefore abhorrent to the law.

Learned counsel has diligently marshaled an array of cases sustaining that view of it. We will not quote from them. They but apply the general doctrine, already set forth, to the varying facts of particular cases—some of them running on all-fours with this. See Williams v. Cowden, 13 Mo. 211, which early put this court in line with that general doctrine.

The judgment is reversed with directions to enter a decree granting plaintiff the relief prayed by her bill. All concur.