FRANCES A. WINGET ET AL., Appellants, v. ROBERT W. GAY ET AL. —28 S. W. (2d) 999.

Division One, June 3, 1930.

*Hulen & Walden, Hunter & Chamier* and *Lane B. Henderson* for appellants.

*Harry J. Libby* for respondents.

370

RAGLAND, J.—This is a statutory action to ascertain, determine and quiet title to a tract of land lying in Shelby County, Missouri. It was brought by the heirs of Sarah R. Arthur, deceased, against the heirs of Charles W. Gay, deceased. Gay is the common source of title. The devolution of the title from him was effected through his will, the proper construction of the 9th item of which is determinative of this controversy.

Charles W. Gay married a widow, Catherine Arthur, who had three small children, the oldest of which was about four years of age. The youngest was Sarah R. Arthur. Two children were born

to him of this marriage, but each died in infancy: he had no children or descendants at the time he made his will. At that time his wife was dead, and her two older children, who had been reared in his home, had grown up and gone to homes of their own. But Sarah who had also grown up in his home was still living with him; she was then forty-four years of age; she was in frail health— a semi-invalid—as she had been all of her life. She never married, but continued to make her home with him until his death, which occurred in 1896. She died in 1927, intestate, at the age of seventy-five. Gay left surviving him no children or descendants, but he did leave collateral heirs, brothers and sisters and the children of deceased brothers and sisters, with all of whom he had always been on cordial terms. His will, made in 1888, following specific bequests of one dollar to each of his brothers and sisters, contained the following:

"Item. I give and devise all the residue of my estate to Sarah R. Arthur, as long as she remains single, and if she marry it is my will that she share equally with the other heirs."

Under this provision, according to the trial court's construction, Sarah R. Arthur took a life estate, determinable upon marriage, with remainder over to the heirs of the testator. From a judgment based on such construction plaintiffs prosecute this appeal.

Appellants press alternative contentions:

First, That the latter part of the "Item" just quoted, "as long as she remains single, and if she marry it is my will that she share equally with the other heirs," is void because in restraint of marriage, and for that reason must be wholly eliminated from consideration in construing the provision; and that the remainder thereof, "I give and devise all the residue of my estate to Sarah R. Arthur," must, in accordance with Section 551, Revised Statutes 1919, be construed as devising the fee.

Or, Second, That the will passed to Sarah R. Arthur the fee, subject to be defeated by the happening of a condition subsequent, her marriage; as the contingency never happened, and cannot now happen, her heirs are vested with an indefeasible fee.

If either contention be sound the circuit court was in error.

I. To construe a will means primarily to determine what the testator intended by the language he used. This in order that effect may be given the intent when ascertained, unless it violates some positive rule of law or contravenes some well established principle of public policy. There can be no question but that provisions in deeds or wills in general restraint of marriage are in contravention of public policy and therefore void. [Williams v. Cowden, 13 Mo. 212; Knost v. Knost, 229 Mo. 170, 129 S. W. 665; Sullivan v. Garesche, 229 Mo. 496, 129 S. W. 949.] Does the testator's purpose as disclosed by

the will in question run counter to that public policy? Was it his purpose, in limiting her enjoyment of his estate to "as long as she remains single," to restrain his step-daughter from marrying? to promote celibacy? When all the circumstances are considered, it seems obvious that it was his intention merely to provide for her while single, that is, until such time as an obligation to furnish her support and maintenance should be assumed by a husband; that when through marriage she should no longer be dependent upon his bounty, his estate should go to his own kindred. It may be that she preferred the enjoyment of his estate to marriage, and for that reason did not marry, but if so, that fact was merely incidental and did not militate against his undoubted right to limit the duration of his bounty to such time as he saw fit, namely, the period of her probable dependency. The provision in question is not obnoxious to the rule against restraint of marriage. [Wise v. Crandall, 215 S. W. 245; Harlow v. Bailey, 189 Mass. 208; Ruggles v. Jewett, 213 Mass. 167; Trenton Trust etc. Co. v. Armstrong, 70 N. J. Eq. 572; Maddox v. Yoe, 121 Md. 288.]

II. "As long as she remains single" are words of limitation and not of condition: they mark the period which is to determine the estate. An estate so limited may last for life and is therefore a life estate, although it terminates upon the marriage of the donee.

In Tillerson v. Taylor, 282 Mo. 204, 209, it was said:

"In the will of Joseph Montgomery expressions were used which show the intention of the testator was to vest the title to the lands in his widow only during her widowhood. The expressions 'to have and to hold the same and enjoy during her widowhood,' and, 'so long as she remains my widow,' occur in the clause wherein the gift to her is made, as a definition of the quantity of the estate given. Such a devise always has been held to pass only an estate for life, and apter words for that purpose could not be chosen. [2 Black, Commen. 121; Williams on Real Property (17 Internat. Ed.) p. 142; 2 Minor's Institutes, Chap. 8, par. 2g.] Moreover, the estate given was intended to last only 'so long as she remains my widow;' only so long as Edna Montgomery remained the widow of the testator. That expression, and also the one 'during her widowhood,' were apt words to make the life estate one of limitation, which would terminate instantly upon the remarriage of the widow, without entry or other assertion of title by the remaindermen. [1 Washburn, Real Property (6 Ed.) sec. 165, p. 79.]"

If an estate be given to a woman *"dum sola fuerit,"* or *"durante viduitate,"* the grantees have an estate for life determinable upon the happening of these events. This is ancient law. And the cases make no distinction as to the duration of the estate whether the

devisee be a widow or an unmarried woman. In both instances the object of the devise is the support of the devisees until marriage, and the estates devised are at most life estates.

The provision under consideration passed to Sarah R. Arthur a life estate with a limitation over, "if she marry." The persons who were to take upon her marriage were the testator's heirs. She did not marry, but notwithstanding, the remaindermen, who were also the testator's heirs, took under the will and not as heirs. The rule is well established that, where a testator gives to a woman a life interest if she so long remains unmarried, and then directs that in the event of her marriage the property shall go over to another, although, according to the strict language, the gift over is expressed only to take effect in the event of the marriage of the life tenant, the gift over is held to take effect even though the tenant for life does not marry. For a review of the authorities, both English and American, see Maddox v. Yoe, supra.

The construction placed upon the will by the learned circuit court finds ample support in both reason and authority. Its judgment is affirmed. All concur.