Robert A. HEREFORD et al., Plaintiffs-Appellants,

v.

The UNKNOWN HEIRS, GRANTEES OR SUCCESSORS OF Adelle THOLOZAN, Deceased, et al., Defendants-Respondents,

Benoist Sanguinet et al., Defendants-Appellants,

Reubin Sanguinet et al., Intervenors-Appellants.

No. 45335.

Supreme Court of Missouri.

En Banc.

July 9, 1956.

Stamm, Millar, Neuhoff & Campbell, By: David Y. Campbell, St. Louis, for Benoist Sanguinet et al.

Thompson, Mitchell, Thompson & Douglas, Richard P. Conerly, Charles M. Spence, St. Louis, Robert A. Hamilton, St. Louis, for Locust Realty Co. and Frank's, Inc.

Henry Ebenhoh, St. Louis, for St. Louis Title & Abstract Co.

Robert Ebert, St. Louis, for John Sanguinet and Reubin Sanguinet.

HOLLINGSWORTH, Judge.

■ This appeal arises out of a suit brought in six counts. Count One seeks construction of the will of Adelle Tholozan, deceased. Counts Two, Three, Four and Five seek to quiet title to four tracts of real estate owned by testatrix at the time of her death. Count Six seeks partition of said real estate. It appearing to the parties and to the court, following a pretrial conference, that an adjudication of the issues presented under Count One would be basically determinative of the remaining five counts, it was ordered that Count One be separately tried and that a final and appealable judgment be rendered thereon prior to trial and adjudication of all other issues in the case. From the final decree rendered on Count One, plaintiffs and certain of the original defendants have joined in an appeal and certain intervening defendants have joined in another appeal. This court has jurisdiction both because title to real estate is involved and the amount in dispute, exclusive of costs, exceeds $7,500. Article V, § 3, Constitution of Missouri, V.A.M.S.

Adellé Tholozan, a widow, executed the will in question on December 9, 1862. She died on April 2, 1877, without having remarried and without issue. Her will, consisting of two handwritten pages, a photostatic copy of which is in evidence, was duly admitted to probate in the Probate Court of the City of St. Louis.

*Item First* thereof forgave all indebtedness owing testatrix by her niece, Adelle Phillips, and ordered the evidences thereof cancelled and delivered up by the executors named in Item Fifth.

*Item Second* devised "about one hundred & fifty four arpens" (approximately 154 acres) of land in St. Louis County, in equal shares, per stirpes, to testatrix' brother, Charles Sanguinette, her sisters, Caroline Cozens and Mary Garnier, and the two children of a deceased sister, Eulalie Bright, to wit: Charles Bright and Eulalie Page.

*Item Third* devised a life estate in the western half of a lot in the City of St. Louis (hereinafter referred to as the Hebert Street property) to Bridget Healy, whom, the will says, testatrix "raised".

*Item Fourth*, on which the issues presented by this appeal turn, reads as follows:

"It is my will & desire, & I hereby give, grant, devise & bequeath all the balance & remainder of my property & estate of every nature & kind whatsoever unto Louis V. Bogy & William C. Jamison as joint tenants & Trustees, for the Sole, separate & exclusive use, benefit & behoof of Adelle Philips my niece, during her natural life, and at & after her death, then for the sole, separate & exclusive use, benefit & behoof of Eulalie Philips only daughter of said Adelle Philips & all other children of said Adelle Philips, if any should be born hereafter, share & share alike, & if the said Eulalie Philips & the other children of said Adelle Philips, if any there should be, shall die, without having married, or without issue living, then the said property as aforesaid, & such portion thereof as shall then be on hand, shall go to & vest in fee simple in the said Sisters and brother of said Adelle Tholozan & their legal representatives, according to law, the Statutes of descents and distributions."

Testatrix' brother and sisters named in Item Second of her will died prior to 1900.

Adelle Phillips, the person named in Items First and Fourth, was a daughter of testatrix' brother, Simon Sanguinet. She was 28 years of age when the will was executed. She died February 28, 1920, at the age of 85 years, leaving surviving as her only child, Eulalie Phillips, the person named and referred to in Item Fourth. (The only other child of Adelle Phillips, a son, died in infancy prior to the execution of Mrs. Tholozan's will.) Eulalie Phillips, aged three years when the will was executed, died testate on March 19, 1950, at the age of 90 years. She had never married and left no issue, either natural or adopted. Defendant Arthur P. Luchesi was named executor of her estate.

The total value of testatrix' estate, at time of probate, was approximately $100,-000. It consisted of personal property of an approximate value of $15,000, the tract of real estate devised by her in Item Second, which tract is not here in controversy, and the four parcels described in the petition. These four parcels hereinafter are referred to as the Olive Street property, the Hebert Street property, the Walnut Street property and the Locust Street property.

By deed dated March 22, 1901, Adelle Phillips and Eulalie Phillips conveyed all their right, title and interest under testatrix' will in the Walnut Street property to James P. Maginn, who, in turn, deeded said property to defendant Maginn Investment Company.

The Hebert Street property was taken in condemnation by defendant City of St. Louis under a condemnation suit filed on August 5, 1922. The sum of $1,600 was awarded as damages for such condemnation, which sum was paid into the registry of the St. Louis Circuit Court on March 23, 1927, by defendant City of St. Louis, where it remained at the time of trial. The City of St. Louis denied any interest in the issues here presented.

On May 29, 1944, Eulalie Phillips quitclaimed the Locust Street property to defendant Locust Realty Company for an ex-

pressed consideration of $100. Plaintiffs offered to show that the actual consideration was $11,000, which offer the trial court, on objection of certain of the individual defendants, refused. On February 13, 1947, defendant Locust Realty Company leased said property to defendant Frank's Inc., for a period of ten years ending February 28, 1957, at an annual rental of $9,000. On June 17, 1947, defendant Locust Realty Company executed a deed of trust on the Locust Street property to secure an indebtedness for borrowed money in the amount of $30,000. On June 2, 1952, defendant St. Louis Title and Abstract Company acquired said deed of trust and the remaining principal note secured thereby, in the amount of $23,250, which note was due on June 17, 1952.

In a memorandum opinion, the trial court found that Item Fourth should be construed "in accordance with the contentions of counsel for Locust Realty Company", which, as we understand the record, are, in the main, also the contentions of such of the other defendants as claim under Eulalie Phillips, including defendants Maginn Investment Company, Frank's, Inc., and St. Louis Title and Abstract Company, the latter two of whom have joined with Locust Realty Company in a respondents' brief filed in support of the finding and decree of the trial court. The decree rendered herein, after recital of the substance of the aforesaid facts, was:

"9. That the true intent, meaning and legal effect of Item Fourth of the will of said Adelle Tholozan, deceased, * * * were to create * * * [in the four tracts of property referred to in said Item Fourth] * * * a life estate in said Adelle A. Phillips and a fee simple absolute in said Eulalie A. Phillips and all other children of said Adelle A. Phillips, if any should be born, and an alternative substitutional devise in fee simple absolute in said Caroline Cozens, Mary Garnier, Charles Sanguinette and Eulalie Bright and their legal representa-

tives, according to law, which said latter devise was to take effect only if Eulalie Phillips and all other children of said Adelle A. Phillips, if any should be born, died witout issue and without having married prior to the death of her mother Adelle A. Phillips.

"10. That by virtue of said Eulalie A. Phillips surviving and being the only child of her mother, said Adelle A. Phillips, said Eulalie A. Phillips became vested with a fee simple absolute in the property * * * [described in Item Fourth] * * * and the said alternative substitutional devise to plaintiffs and certain of the defendants as surviving legal representatives of the said Caroline Cozens, Mary Garnier, Charles Sanguinette and Eulalie Bright failed."

The respective interests and titles of the many parties herein were thereupon determined and adjudged in accord with the portions of the decree above quoted.

The appellants (with the exception of intervenor-defendants John Sanguinet and Reubin Sanguinet) are the descendants and successors of testatrix' brother and three sisters mentioned in Item Second of the will. (Henceforth, we will refer to these parties, consisting of the plaintiffs and such of the defendants whose interests are in common with those of plaintiffs, as "the appellants", unless we specifically otherwise so state.) They contend that testatrix did not devise a fee simple title to Eulalie Phillips and that they, as the residuary devisees named in Item Fourth, were invested with fee simple title upon the death of Eulalie Phillips.

The executor of Eulalie Phillips' estate and her heirs and residuary devisees contend that Item Fourth devised a remainder in fee to Eulalie, and, in the alternative, that Item Fourth violates the rule against perpetuities and is void, resulting in intestacy as to the real estate involved in this suit.

The appellant - intervenor - defendants, John Sanguinet and Reubin Sanguinet, are descendants and successors of Frederick Paul Sanguinet, who was not made a beneficiary under the will of testatrix, although he was a son of testatrix' brother, Simon Sanguinet, and a brother of Adelle Phillips. They contend that the provisions of Item Fourth violated the rule against perpetuities and that testatrix "died intestate as to any remainder she attempted to devise" to her sisters and brother named in Item Second of her will; and that they are therefore entitled to take of her estate such share in said property as would inure to them under the statutes of descent and distribution.

The contentions of respondents Locust Realty Company and others claiming under Eulalie Phillips (to whom we will refer as "the respondents" unless other respondents are specifically designated) are that the decree of the trial court declaring that an indefeasible fee simple title to said four parcels of real estate vested in Eulalie Phillips as the sole surviving child of Adelle Phillips is sound and should be affirmed.

■ The infinite variety of expressions and the differing shades of meaning so often attached to identical words or phrases when employed by the makers of wills in a context and under circumstances peculiar to the context of the will of each testator and the circumstances under which it was written make prior decisions construing similar words or phrases of far less value as precedent than those in other fields of litigated controversies. Scullin v. Mercantile-Commerce Bank & Trust Co., Mo. Sup., 234 S.W.2d 597, 602; Housman v. Lewellen, 362 Mo. 759, 244 S.W.2d 21, 23. But, fundamentally and always, the paramount rule in construing wills is the ascertainment of the intent of the testator, which is to be determined, if possible, from a consideration of the instrument as a whole. St. Louis Union Trust Co. v. Kelley, 355 Mo. 924, 199 S.W.2d 344, 349. While a will speaks from the death of the testator, yet when its true intent and meaning is under consideration the court, if necessary, will also consider the situation of and circumstances surrounding the testator when it was executed. If, from such an examination, the intent is ascertainable, auxiliary rules of construction are not to be resorted to. If, however, the language is ambiguous and the intent not clear from a consideration of the instrument as a whole and in the light of the situation and circumstances under which it was written, then recourse to such rules is permissible. Shackelford v. Fifer, Mo.Sup., 269 S.W.2d 30, 33.

■ Appellants say that, contrary to the conclusions reached by the trial court, the entire plan of disposition, the circumstances under which the will was written, and the language employed in it show that testatrix intended Eulalie not take a fee simple title. They argue that by virtue of Item Fourth testatrix wanted only to insure the support of her niece, Adelle Phillips, and Adelle's child, Eulalie, and any other children born to Adelle, so long as any of them lived, and did not intend to give them full ownership of the property. They assert that the giving of the legal title to the residuary estate to trustees for the "sole, separate & exclusive use, benefit & behoof" of Eulalie, after Adelle Phillips' death, is *insufficient* to create a fee in Eulalie. They concede, however, that the determination of the sufficiency of the langue used therein to create a fee in Eulalie "is, of course, primarily a question of intent". That legal title was vested in the trustees is admitted, and the will expressly states it was placed there for the sole, separate and exclusive use and benefit of Eulalie and any other children thereafter born to Adelle, share and share alike. There is no limitation, other than Adelle's life estate, to the extent or duration of the benefits accruing to Eulalie and any other children thereafter born to Adelle. The trustees were invested with no control and no duties other than, perhaps, the duty, if more than one child should be born to Adelle, to see that all should "share

& share alike". Certainly the trust, in effect, became dry upon Adelle's death with no child other than Eulalie having been born to her subsequent to execution of the will.

" 'A vested interest is one in which there is a present fixed right, either of present enjoyment or of future enjoyment. Where, under the terms of the gift, there is an ascertained person in existence who could take the remainder in possession immediately upon the determination of the particular estate whenever and however it may determine, the estate is vested.' " Painter v. Herschberger, 340 Mo. 347, 100 S.W.2d 532, 535 [4]. The fact that the legal title was placed in trust did not prevent the vesting of title in Eulalie upon Adelle's death, she being the only child born to Adelle. Painter v. Herschberger, supra.

The instant case is readily distinguishable from the cases of Humphreys v. Welling, 341 Mo. 1198, 111 S.W.2d 123, and Cross v. Hock, 149 Mo. 325, 50 S.W. 786. In each of those cases, the will, considered as a whole, was held to reveal a definitely ascertainable intent to withhold investiture of the fee until determination of the contingency therein provided. That is not the situation here presented and appellants, in effect, so admit by further suggesting that the photostatic copy of the will gives evidence it was written in haste and that "it is almost an irresistible conclusion that the scrivener, by mere clerical error in his haste, left out the words 'during her natural life' in the provision for the use and benefit of Eulalie, the same as those words appeared just previously in the otherwise identical provision for the use and benefit of Adelle Phillips."

■ We are convinced that the language employed in Item Fourth was *sufficient* to vest equitable title to the remainder in said property in Eulalie Phillips (subject to admission of any other child or children thereafter born to Adelle).

But appellants also say that the will and the circumstances reflected therein show that testatrix *intended* to give her property to preferred relatives named in Item Second (and the life estate given Bridget Healy in Item Third), subject only to a desire to insure the support of her niece, Adelle, and the latter's child, Eulalie; that the trust created and the words employed in the devise show such an intent; that the use of the words in Item Second, "unto the said devisees & to their heirs & assigns forever in fee simple", the use of the phrase "during her natural life" in referring to the devise to Bridget Healy and to Adelle Phillips, "followed by a gift to Eulalie of the right to occupy and enjoy the property after the first life beneficiary's death, with no mention whatever of a gift of the fee to Eulalie, although immediately thereafter, and in the same clause testatrix finally provided that her property 'shall go to and vest in fee simple' in appellants upon the contingency provided," are strongly indicative of an intent to withhold a fee from Eulalie. It is worthy of note that by stressing other phraseology peculiar to Item Fourth respondents attach an entirely different meaning to said Item. They direct our attention to the fact that in defining the interest devised to Adelle Phillips, Item Fourth specifies that it be for life, whereas no such limitation appears in the provision for Eulalie, which, except in that respect, is identical with the provision for Adelle. They then argue that if the draftsman meant only a life estate for Eulalie, it would have been natural and ordinary for him to say so; and that when he used language that effectively created a fee simple estate, his language should be construed to mean what it says. A careful perusal of the will does not convince us that appellants' contention that testator intended only a life estate for Eulalie is more persuasive than respondents' contention that the omission of such a phrase is due to a desire on the part of testatrix not to limit the estate devised to Eulalie "during her natural life".

Appellants next suggest that the "provision in trust for the use and benefit of

Eulalie Phillips, * * * when followed by a devise in fee simple in appellants if Eulalie died 'without having married, or without issue living', is strongly indicative of an intent to provide for Eulalie an estate for life only", citing Winget v. Gay, 325 Mo. 368, 28 S.W.2d 999. In that case, the will devised the residue of testator's estate to his daughter "'as long as she remains single, and if she marry it is my will that she share equally with the other heirs'". The court, 28 S.W.2d loc. cit. 1000, held, first, that the provision was not obnoxious to the rule against restraint of marriage, and, second, that "'As long as she remains single'" were words of limitation and marked the period which was to determine the estate and created at most a life estate. "An estate so limited may last for life and is therefore a life estate, although it terminates upon the marriage of the donee." That case does not sustain appellants' contention.

Finally, appellants say: "If, on the other hand, it were proper to construe the entire provision, not as a life estate for Eulalie, but as a devise of the fee to her and her issue, but in default of issue living at her death to appellants, the resultant error in the Trial Court's decree is the same. Under such construction, the language would have created a fee tail at common law, limited by executory devise upon definite failure of issue. If it be assumed that such was the intended meaning of testatrix' language, then it must also be presumed that testatrix knew that the legal effect thereof, by the statute now Section 442.470 RSMo 1949, V.A.M.S., was to create a life estate in Eulalie and a remainder in fee in her issue, contingent upon their surviving Eulalie, with executory devise thereafter to appellants. This, too, shows testatrix' intention that Eulalie Phillips' interest terminate at her death." In support of this contention appellants cite Pixlee v. Petty, Mo.Sup., 274 S.W.2d 257, 258. In that case, after devise of a life estate to his wife and a power of sale of certain property, testator gave his residuary estate

to his only living daughter *and to her bodily heirs,* and stated, "'If she should die without leaving bodily heirs, then I give and devise the remainder which would go to said bodily heirs, if such existed, to my brothers and sisters, in fee simple, * * *. If my said daughter should die prior to the death of my said wife, then possession of the real estate in this clause given to such devisees is postponed until the death of my wife.'" The case is too long to here review. Suffice to say the court decided that the language used negatived any intent to create an absolute estate in the first instance; that by force of the statute abolishing estates tail the effect was to create in the daughter a life estate with a remainder in fee in her bodily heirs, contingent upon their being such bodily heirs *in esse* when she died. A full review of the case shows it to be further distinguishable from the instant case on account of the contents of the will and the circumstances and surroundings under which it was written.

Testatrix undertook, primarily, to devise her estate to (1) her sisters and brother and the children of the deceased sister specifically named in Item Second; (2) Bridget Healy, not related; and (3) the niece and grandniece, respectively, Adelle Phillips and Eulalie Phillips, and other children, if any, born of Adelle Phillips. Other provisions seem to have been secondary and incidental only to avoidance of possibility of partial intestacy. Respondents contend that the further provision that if Eulalie should die without having married and without issue, "then the said property as aforesaid, & such portion thereof as shall then be on hand," should go to the brother and sisters (and children of a deceased sister) in fee simple was the result of an afterthought, the afterthought being the possibility of the death of Eulalie prior to that of testatrix and of Adelle Phillips; and that the only purpose of the "afterthought" provision was to vest title in the preferred beneficiaries named in Item Second, rather than to permit the property to pass under the laws of intestacy to all of

testatrix' heirs if the fee devised to Eulalie failed by reason of her death unmarried or childless prior to the deaths of testatrix and Adelle Phillips. The argument is logical and strong legal precedent leads to the conclusion that the will is to be so construed.

The case of Owens v. Men and Millions Movement, 296 Mo. 110, 246 S.W. 172, 173, decided in 1922, followed by other cases of similar import, is decisive of the question here presented. In the Owens case, the testator, in paragraph 7 of his will, devised the residue of his property jointly to his daughter and son-in-law in fee. In paragraph 8, he provided that in case of their death the residue was to go to his granddaughter; and in paragraph 10, the will continued: " 'It is my will in case my said daughter and son-in-law and granddaughter *should all die without leaving any issue,* then in such event all of my said property * * * shall be divided * * and * * * shall go to * * * [named beneficiaries, including Men and Millions Movement].' " (Emphasis ours.) The daughter and son-in-law survived the testator and the court held that " 'die without leaving any issue' " meant death without issue during the lifetime of the testator. Accordingly, the court held that by surviving the testator the daughter and son-in-law took an absolute fee; and in so doing rejected the contention (here also made) that they took a fee terminable upon their death without issue at any time. In so holding the court, 246 S.W. loc. cit. 174, stated: "But the great weight of authority supports the rule that, when real estate is devised in terms denoting an intention that the primary devisee shall take a fee on the death of the testator, coupled with a devise over in case of his death without issue, the words refer to a death without issue during the lifetime of the testator, and the primary devisee surviving the testator takes an absolute estate in fee simple. The intention of the testator is presumed to be to prevent a lapse. [Cases cited.] The rule just stated is in accord with the settled policy of the courts of both this country and England, that words of doubtful meaning will be so construed as to favor the heir; as to give an estate of inheritance to the first devisee; as to vest the title to an estate so that it will not remain in abeyance. [Cases cited.]"

In the later (1928) case of Ewart v. Dalby, 319 Mo. 108, 5 S.W.2d 428, loc. cit. 429, the will provided: " ' "Bequeath to my beloved wife, Frances, all personal property and real estate * * * and at her death * * * to my daughter, Esther Frances * * * and if she dies *single and unmarried and without issue,* to my brother Pinkney W. Sublette, if living, and at his death if single and unmarried and without issue I bequeath said property to my next of kin on my father's side." ' " (Emphasis ours.) The court, following the rule announced in the Owens case, supra, construed the provision " ' "and if she dies single and unmarried and without issue" ' " to refer to the death of Esther Frances single and unmarried and without issue prior to the death of the testator or the life tenant, testator's widow, Frances.

In the Ewart case it was further argued, as appellants here argue, that the double contingency of the death of both the life tenant and the death of Esther Frances single and without issue distinguished it from the rule laid down in the Owens case. The court, after an extensive review of authorities, rejected that argument and held the will could only be construed as referring either to the death of the daughter, Esther Frances, during the lifetime of testator or the lifetime of the life tenant widow; that under either rule of construction, Esther Frances, having survived both the testator and the life tenant (as did Eulalie Phillips in the case at bar), became vested with an absolute and indefeasible fee, and that the devise over to Pinkney Sublette was inoperative and ineffective. The doctrine announced in both the Owens and Ewart cases has been consistently followed. See Kindred v. Anderson, 357 Mo. 564, 209 S.W.2d

912. It also is the majority rule elsewhere. See Simes and Smith, The Law of Future Interests (1956), §§ 538, 540.

It follows we must hold that Eulalie Phillips, having survived both testatrix and the life tenant, Adelle Phillips, took an indefeasible estate in fee; and that the provisions of the will relating to disposition of the property on death of Eulalie unmarried or without issue was substitutional only and became ineffective when Eulalie survived both testatrix and Adelle Phillips. The construction we have placed on the will makes unnecessary any discussion of the rule against perpetuities. So construed, the will could not be violative of that rule.

The judgment of the trial court, being for the right parties, is affirmed.

All concur.