Hattie L. LEWIS, Appellant,

v.

Janice SEARLES et al., Respondents.

No. 54528.

Supreme Court of Missouri,
Division No. 2.

April 13, 1970.

———◆———

James D. Sickal, Blanton, Blanton & Rice, Sikeston, for appellant.

James M. Reeves, Ward & Reeves, Caruthersville, for respondents, J. R. (Dick) Lewis and Lilbourn Z. Lewis.

HENRY I. EAGER, Special Commissioner.

In this declaratory judgment suit plaintiff seeks to have the title to certain real estate quieted in her in fee and, in the process, to have a will construed. We have jurisdiction since the title to real estate is directly involved. The trial court adjudged that plaintiff had a life estate in the whole of the property, and a fee simple interest in an undivided one-third thereof, subject to the life estate. After an unavailing motion for a new trial plaintiff appealed.

The real estate is described as follows: "All of the Northeast Quarter of the Southwest Quarter and the West 60 acres of the Southeast Quarter, all in Section 25, Township 22 North, Range 13 East of the Fifth Principal Meridian in the County of New Madrid, State of Missouri."

The will involved here was that of Letitia G. Lewis (the owner of the land) who died on Sept. 27, 1926; this will was probated shortly thereafter. At the time of her death the testatrix left surviving her two nieces, the plaintiff and Letitia L. LaForge, and a nephew, James R. Lewis. At the time of the institution of this suit Letitia LaForge had died leaving three children; one of these childen had died, also leaving three children. The nephew had also died leaving two sons, both of whom have entered their appearance and have actively contested the suit. The necessary defendants who reside in Missouri have been served with process and the others by publication. We have asked for and received certified copies of certain documents in order thus to verify the jurisdiction over the parties.

The facts, although somewhat scanty, are contained in a stipulation. No oral evidence was taken. The plaintiff was 95 years of age at the time of trial, and is presumably now about 96; she was thus approximately 53 years of age when the will was probated. We are told that the will was executed on May 31, 1911, when plaintiff was 38 years old. She has never been married. Since the death of the testatrix, plaintiff has been in continuous possession of the real estate.

Paragraph "Second" of the will was as follows: "Second, I devise to my niece, Hattie L. Lewis, all of my real and personal property of which I may die seized and possessed, so long as she remains single and unmarried. In the event that the said Hattie L. Lewis shall marry, then and in this event I desire that all of my property, both real and personal be divided equally between my nieces and nephews as follows, to the said Hattie L. Lewis, an undivided one third, to Letitia A. LaForge, wife of A. C. LaForge, an undivided one third, and to James R. Lewis an undivided one third." This is the only part in controversy.

In her petition plaintiff alleged the various relationships (including therein sundry unnecessary parties), described the real estate, attached a copy of the will, and prayed for an order of publication. She further alleged: that she had never been married; that she received an estate in fee under the will; that the restriction in the will against marriage was void; and that the other niece and the nephew of testatrix were deceased. The prayer was that a guardian ad litem be appointed for the minor defendants and others (which was done) and that title in fee to the land be quieted in her. The answer of J. R. (Dick) Lewis and Lilbourn Z. Lewis (children of the nephew) admitted plaintiff's possession and her right to possession, but denied that she was the owner of the fee. In a counterclaim they prayed that title in fee to an undivided one-third of the land be quieted in each of them under the terms of the will, subject to a life estate in plaintiff. In a reply to the counterclaim plaintiff reaffirmed her position that she was the owner in fee of all the land.

The trial court found (aside from formal and admitted facts) that it was the intention of the testatrix to give to plaintiff a *life estate*, and that "upon the death of said plaintiff that the fee title to said real estate vest in fee simple one-third to plaintiff, Hattie L. Lewis, one-third to Letitia L. LaForge and one-third to James R. Lewis, or to their descendants, hereinabove named." Judgment was entered accordingly, providing that plaintiff was the owner of a life estate and also the owner in fee simple of an undivided one-third interest, subject to her life estate, with the remaining undivided two-thirds in fee vested as already indicated. Plaintiff's motion for a new trial was overruled.

Plaintiff's counsel raise two points on this appeal, simply stated, but not so simply decided: (1) that all provisions of the will concerning the marriage of plaintiff are void as against public policy and should be stricken; (2) that in any event it was not testatrix's intention to devise to plaintiff a life estate with a one-third remainder in fee, but to devise to her a determinable

fee in the whole of the property, to be reduced only in the event of her marriage. Respondents simply converse these points, and the issues are clearly drawn.

There is no doubt that the older cases in Missouri and elsewhere held that a provision in general restraint of marriage was void as against public policy. Knost v. Knost, 229 Mo. 170, 129 S.W. 665, 49 L.R.A.,N.S., 627; Sullivan v. Garesche, 229 Mo. 496, 129 S.W. 949, 49 L.R.A.,N.S., 605; Williams v. Cowden, 13 Mo. 148 [211]; 122 A.L.R. 7, Note. But, as stated by the author of the A.L.R. Annotation at loc. cit. 9, the courts have been reluctant to apply the rule and it has well-nigh been "eaten out with exceptions." One exception which has long been recognized is the right of a husband to terminate or decrease the extent of a devise to his wife upon her remarriage (subject, of course, to her statutory right to renounce the will). Knost, Sullivan, supra. As said by Judge Lamm in Knost, supra, it seems to be settled law that men "have a sort of mournful property right, so to speak, in the viduity of their wives, * * *." 129 S.W. loc. cit. 667. The author of the A.L.R. Annotation says that "The preponderance of modern opinion seems to be that the right of a donor to attach such conditions as he pleases to his gift will outweigh the maxim that marriage should be free, except where such conditions are evidently attached through caprice rather than from a desire to carry out a reasonable purpose." (Loc. cit. 11-12.) The history of this most ancient rule is discussed in that Annotation. It is obvious that the cases on the subject are both conflicting and confusing, but that most, if not all, courts still give lip service to the doctrine. The tendency, however, is to consider whether, under the circumstances, the provision serves a legitimate purpose. And one reason which the author mentions as most commonly applied is the desire to furnish support to the devisee while single. Much confusion has developed in attempts to determine whether such a provision, in any given case, is a limitation or a condition. It has been indicated that generally a devise which is to be reduced in the event of marriage is held to be a condition subsequent. (Anno. loc. cit. 73.)

Into this welter of conflict and confusion came the case of Winget v. Gay, 325 Mo. 368, 28 S.W.2d 999 (1930). Plaintiff says that this case is not controlling because it was decided after the will in our case was probated. If that be the true rule, it would seem impossible ever to change the case law, since every such case is decided after the particular will involved has been probated. We follow Winget in part; in other respects it appears to be disinguishable. There the decedent had married a widow with three small children; the two born of his own marriage to her died, as did (later) the widow; two of her children were grown and living in their own homes. The other, the stepdaughter involved in the case, was a semi-invalid but she remained with him until his death. She was forty-four when his will was executed. He devised to her all the residue of his property "as long as she remains single, and if she marry it is my will that she share equally with the other heirs." His "other heirs" were brothers and sisters to whom he bequeathed one dollar each. Two essential questions were raised: (1) the validity of the provision concerning the stepdaughter's marriage, and (2) whether she got a determinable fee or a life estate in the residue. The Court initially recognized the rule that provisions in general restraint of marriage are void (citing the above Missouri cases) and then proceeded to impose its own exception. It held: that the testator's purpose, "when all the circumstances are considered," was merely to provide support for the stepdaughter while she was single and until such time as the obligation might be assumed by a husband; that, thus construed, his purpose *and the provision* did not "run counter" to public policy; and that he had the right to limit the duration of his bounty to the time of her probable dependency. The Court proceeded to hold,

thereafter, that the devisee only took a life estate. We shall discuss that phase later.

■ It seems probable that there was, in the Winget case, some evidence of circumstances. Plaintiff says here that we may not reach a similar result with no such evidence. However, we find that the very wording of the will in our case expresses an intent of the testator to provide *support* for the plaintiff while she remained unmarried but, upon the happening of such a contingency, to require that she share with the other niece and the nephew. The provision did not constitute a penalty for marrying. This provision was obviously not inserted by whim or "caprice," for plaintiff was not to be cut off if she did marry. We conclude that the provision of the will concerning marriage was valid. We realize that this decision perhaps goes one step beyond the holding in Winget, but we find that the wording of the will itself justifies the result, and that it is more closely in accord with the tendency of the modern cases than it would be to hold otherwise.

■ The more difficult question remains: What estate did plaintiff take, a life estate or a determinable fee? The rule is very clear that each will must be construed as a whole to arrive at the intent of the testator, which, after all, is the ultimate guiding principle. We note: that testatrix said nothing about plaintiff's death; that there was no gift or limitation over upon plaintiff's death, and that this might result in total or partial intestacy if the will devised to her only a life estate; that plaintiff was to be given immediately one-third of the same property *in fee, if* she married; that it is not stated whether it was necessary for the nephew and the other niece to survive the plaintiff in order to receive one-third in fee upon plaintiff's marriage; that the devise to plaintiff was the only residuary clause in the will; that Section 474.480, RSMo 1959, V.A.M.S. (effective in substantially similar form at that time) eliminates

the necessity for the words "heirs and assigns," if no intention appears to convey only an estate for life *and* if no further devise is made to take effect after the *death* of the devisee. It is clear that under Section 474.480, if the testator had stopped after merely devising to plaintiff all of her real and personal property, a fee simple estate would have been created. And it is also true that, in order to cut down a fee estate which has been granted, the words of a subsequent (and supposedly limiting provision) should be as clear and decisive as those of the preceding clause. Vaughan v. Compton, 361 Mo. 467, 235 S.W.2d 328; Middleton v. Dudding, Mo., 183 S.W. 443.

Defendants rely strongly on Winget, supra, to establish their claim that plaintiff took only a life estate, determinable on marriage. The Court so held there, holding also that the words "as long as she remains single," were words of limitation and duration, and that since the devisee might remain single until she died (which she did) she took a determinable life estate. It was apparently this construction of the particular wording of that will which was found to be decisive. The Court did not *mention* the predecessor statute of

Section 474.480. We do not find that part of the opinion to be controlling here. One of the prime rules of construction is that a will must be construed as a *whole*, seeking to gain the testator's real intent from every sentence and every word. We also note that we are dealing here with specific real estate; if there was any personal property or any other real estate we do not know of it, and it is certainly not involved.

In Winget the "sharing" (upon marriage) was to be had generally with "the other heirs"; in our case the contingent sharing was to be expressly accomplished by the grant of "undivided" interests of one-third each in fee simple in this property to two named persons, with plaintiff retaining the other one-third. As we read and reread paragraph "Second" of the present will, we are convinced that

the testatrix was thinking only in terms of *fee interests*, i. e., everything to plaintiff in fee conditioned upon her remaining single, and determinable (except for one-third) in the event of her marriage; and it was expressly provided that if she did marry, one-third (undoubtedly in fee, for there was no further limitation over) should go to each of the three (two nieces and a nephew). There is really no fairly expressed intent of *any* life estate in this will. If plaintiff's interest be held to be a terminable life estate only, it is a little difficult for us to see how she might succeed to a one-third fee interest in the event of her marriage, which intent was obviously expressed. The will contains no devise of plaintiff's interest to anyone after her death. In the Winget case, and in the case of Maddox v. Yoe, 121 Md. 288, 88 A. 225, upon which it relies, the courts have actually *written into* the wills the words "or upon her death" after the expressed contingency concerning marriage. Other authorities have done the same thing but to us it appears illogical. See cases cited on the "implication" theory in 73 A.L.R.2d, Note, at page 488. The argument sometimes made (Hutchinson's Est. v. Arnt, 210 Ind. 509, 1 N.E.2d 585, 4 N.E.2d 202) that unless the devise be construed as a terminable life estate an intestacy would result if the devisee died unmarried, does not bear scrutiny, for if the devise has become a fee absolute upon her death without marrying, her heirs would take as in the case of the death of any other fee simple devisee. A testator does not and cannot pretend to fix the devolution beyond the quantum of a fee. The Annotation in 73 A.L.R.2d at loc. cit. 493 et seq. cites also certain cases as refusing "to imply (a) gift over on death unmarried."

There is a comment in Washington University Law Quarterly, 1951, 595 et seq. upon a Kentucky case (Taylor v. Farrow, Ky., 239 S.W.2d 73) ruling upon a somewhat similar provision for a widow. The Court there held that the language created a determinable fee, and in his comments the author said, in part: "In holding that the language created a fee simple determinable, the court stated that the words of the will, when considered as a whole, evinced an intent to pass the maximum possible estate consistent with the special limitation; and that if the testator had intended to give his widow less than a fee simple, he should have expressly limited the estate to her for life." The Court there decided the case upon the basis of the Kentucky statute which provided that unless a different purpose appeared by express words or by necessary inference, every estate in land created by deed or will, without words of inheritance, should be deemed a fee simple estate. (This is of the same essential substance as our § 474.480.) Cases from other states are cited as reaching the same result (loc. cit. 596).

In the above comment the factors are listed which mitigate for and against construing such a provision as creating a determinable fee. Among those listed as indicating an intent to devise a determinable fee simple are: the fact that the wife (in a case involving widowhood) has been given *part of the same property* in fee upon her remarriage (citing numerous cases from various states); the fact that there is neither a gift over upon death nor a residuary clause, thus resulting in partial intestacy if only a life estate was granted; the existence of a statute eliminating the necessity for words of inheritance as, "in the absence of express words to the contrary." In his conclusion the author of the comment states, loc. cit. 601–602: "It is submitted that in the absence of express language limiting the estate created to one for life, statutes such as the Kentucky act leave little room for the application of the other factors suggested above. The only problem for determination under such a statute is whether *express* words to the contrary are present. It is certainly true that words of limitation such as 'until remarriage' or 'so long as she remains un-

married' are not *express* words to the contrary within the meaning of those terms in the statute. Such words should not be regarded as words measuring the quantum of the estate, but rather as words relating only to the happening of a particular contingency, i. e., remarriage of the widow."

At this point we note again our Section 474.480. We quote it in full, as a matter of convenience. "In all devises of lands or other estate in this state, in which the words 'heirs and assigns', or 'heirs and assigns forever,' are omitted, and no expressions are contained in the will whereby it appears that the devise was intended to convey an estate for life only, and no further devise is made of the devised premises, to take effect after the death of the devisee to whom the same is given, it shall be understood to be the intention of the testator thereby *to devise an absolute estate* in the same, and the devise conveys an estate in fee simple to the devisee, for all of the devised premises." In essence, this says that all devisees are in fee simple, if (1) no intent is expressed to create a life estate only, and (2) no further devise is made to take effect *after the death* of the devisee. The Winget case did not even mention this statute. We do not believe that we are justified in seeking to *force* from the words used an intent to create a life estate when the words do not clearly state such an intent; and certainly we may not substitute the words "death or marriage" for the word "death" as used in part (2) of the statute (as we have numbered it). It would seem that the will here contains neither of the requisites which would create a life estate. This statute evidences a policy of the state to liberalize the construction and effect of provisions in wills which are inartfully drawn, but in which there is no clear intent to devise less than a fee simple. We have concluded, after considerable difficulty, that there was no such intent here, either expressed or fairly to be inferred, and that plaintiff received a determinable fee in the real estate, subject to defeasance

(of two-thirds) upon her marriage. This construction eliminates all possibility of an intestacy in whole or in part, it is consonant with what we believe to have been testatrix's thought and desire, namely, that she was dealing only with fee interests, and it constitutes a compliance with Section 474.480.

We should not conclude without noting a few other Missouri cases. The decision in Tillerson v. Taylor, 282 Mo. 204, 220 S.W. 950, is very similar to that in Winget, supra, and it came about ten years earlier. The Court there found that, on the language of the will, the testator intended to vest title in his wife "only during her widowhood," and considered this as an expression of the quantity of the estate granted. We do not find such an intent in our case. In Buschmeyer v. Eikermann, Mo., 378 S.W.2d 468, the Court construed a will which devised the residue of the testator's property to his wife "so long as she remains a single person," she to receive only that part "provided by law" if she remarried. The Court noted: that there was no devise over if the widow died without remarrying; that although earlier cases, Wise v. Crandall, Mo., 215 S.W. 245, and Gaven v. Allen, 100 Mo. 293, 13 S.W. 501, gave support to the contention of a determinable fee the later cases, Tillerson and Winget, supra, had held on generally similar provisions that the interest so devised was a determinable life estate. The Court said, in part: "Were we determining as a matter of law the present testator's intention from the language he used, without reference to the prior decisions in Tillerson and Winget, supra, we should attach much importance to the fact that testator made a gift over only in the event of his widow's remarriage and not in the event of her death unmarried, as indicating that testator intended to convey a determinable fee. Indeed, myriad cases from other jurisdictions have so viewed such provisions. The fact is, however, that the Winget case seems to settle the present question so far as Missouri is concerned." The Busch-

meyer case thus, standing alone, seems to indicate a preference for a construction finding a determinable fee, absent what it considered to be previous binding·authority.

So here, construing testatrix's intent from the words she used, we attach *much* importance to the fact that the *gift over* was only to be effective in the event of plaintiff's marriage; if she had intended to make the gift over effective on death, she should have said so, as various cases indicate. We decline to change the will, or the intent as we view it, by inserting the words "or death." We have also considered: the fact that plaintiff could not take one-third in fee after her own death, and that the testator apparently had no thought of plaintiff's heirs taking that interest; that if plaintiff's heirs could not take, there would be a partial intestacy; that there might be an issue as to whether or not the other niece and the nephew must survive the plaintiff in order to take one-third each, if plaintiff got only a life estate, at least unless Section 474.480 stepped in and supplied the deficiency; that plaintiff was devised a part of this identical property in fee in the event of her marriage, which indicates something more than the grant of a life estate prior to her marriage, for the testatrix clearly intended for plaintiff to have a greater estate if she did *not* marry; that the testatrix is presumed not to have intended a partial intestacy, but rather intended to dispose of the entire estate by granting a fee determinable on marriage.

Concluding our reference to Missouri cases, in Wise v. Crandall, Mo., 215 S.W. 245, the will provided that all the property was devised to the wife of testator, to have so long as she remained single and unmarried. The Court held (as we understand the rather complicated opinion) that this devise was of a fee, subject to divestiture upon a condition subsequent. In Shaw v. Wertz, Mo., 369 S.W.2d 215, a devise to a wife with full right of control for "so long as she may live," with no devise over

at her death, was held to be one in fee simple. See also, to the same general effect, In Re McClelland's Estate, Mo., Banc, 257 S.W. 808.

A good discussion of this subject appears in Anderson v. Anderson, 150 Or. 476, 46 P.2d 98 (1935), with reference to a will devising all property to the testator's wife "so long as she shall remain my widow"; the Court held that the devise, with no gift over upon death, was one of a fee, subject to divestiture (in part) upon marriage. The Court also noted, with sundry citations, that the more recent cases had so held. We suggest at this point that the cases dealing with devises to widows (where provisions against marriage have been held valid as a general exception) are fully applicable in our situation. We have discussed all of the cases cited by defendants on this point except Mercantile-Commerce Bank & Trust Co. v. Binowitz, Mo.App., 238 S.W. 2d 893, which we consider inapplicable upon its facts.

We thus hold that plaintiff took a fee simple estate in all the real estate, subject to divestiture of an undivided two-thirds interest in the event of her marriage; in such event that two-thirds would vest equally, per stirpes, in the heirs at law of the other niece and nephew. The construction of any will depends upon its own particular terms, and the intent evidenced thereby; it is our belief that the terms of the present will distinguish this case from Winget v. Gay, 325 Mo. 368, 28 S.W.2d 999, and Buschmeyer v. Eikermann, Mo., 378 S.W.2d 468.

The judgment of the trial court is reversed, with directions to enter a judgment in accordance with this opinion.

PER CURIAM.

The foregoing opinion by HENRY I. EAGER, Special Commissioner, is adopted as the opinion of the Court.

All of the Judges concur.